Lisa A. LAWSON, Petitioner
Below, Appellant,

v.

Vincent MECONI, Secretary of the
Department of Health and Social
Services, Richard T. Callery, M.D.,
Medical Examiner for the State of
Delaware, Judith G. Tobin, M.D., As-
sistant Medical Examiner for the
State of Delaware, Keith Banks,
Chief of Police, Rehoboth Beach Po-
lice Department, Kenneth H. McMa-
hon, Chairman, Delaware State Fire
Prevention Commission, Willard F.
Preston, III, individually and as Fire
Marshal of the State of Delaware,
Respondents Below, Appellees.

No. 252, 2005.

Supreme Court of Delaware.

Submitted: March 27, 2006.
Decided: April 3, 2006.
As Corrected April 6, 2006.

John C. Phillips, Joseph James Farnan, III and Brian E. Farnan (argued), Phillips, Goldman and Spence, Wilmington, DE, for appellant.

Ann Woolfolk (argued), James J. Hanley, Department of Justice, Wilmington, DE, for State defendants-appellees and Walter W. Speakman, Jr. (argued), City Solicitor, Town of Rehoboth, Dover, DE, for Rehoboth Police Chief, Keith Banks, defendant-appellee.

Richard G. Elliott, Jr., Chad M. Shandler, Alyssa M. Schwartz, Richards, Layton & Finger, Wilmington, DE, amicus

curiae, for The Maryland Delaware–District of Columbia Press Association.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices (constituting the Court en Banc).

HOLLAND, Justice:

The petitioner-appellant, Lisa A. Lawson ("Mrs. Lawson"), filed this action for preliminary and permanent injunctive relief to prohibit the public dissemination of information concerning the death of her husband, Duane L. Lawson ("Mr. Lawson"), by various government officials. These officials include: Vincent Meconi ("Meconi"), Secretary of the Department of Health and Social Services, Richard T. Callery ("Callery"), Medical Examiner of the State of Delaware, Judith G. Tobin, M.D. ("Tobin"), Assistant Medical Examiner for the State of Delaware, Keith Banks ("Banks"), The City of Rehoboth Beach Police Department Chief of Police, Kenneth H. McMahon ("McMahon"), Chairman of Delaware State Fire Prevention Commission, and Willard F. Preston, III ("Preston"), Fire Marshal of the State of Delaware.[1] Specifically, Mrs. Lawson seeks to preclude the defendants from releasing the report of the autopsy performed on Mr. Lawson, or the confidential information contained therein, to the public. In support of her position, she relies upon: title 17, section 1232 of the Delaware Code; title 29, section 4701, *et. seq.* of the Delaware Code; and the common law right to privacy.

The Court of Chancery issued a Memorandum Opinion and Order denying Mrs. Lawson's request for a preliminary injunction on the grounds that Mrs. Lawson did

---

1. Meconi, Callery, Tobin, Banks, McMahon and Preston are collectively referred to as the "State defendants."

not show a reasonable likelihood of success on the merits of her claims. The Court of Chancery held that the statutes relied upon by Mrs. Lawson do not preclude the public release of her husband's autopsy report by the defendants. The court also held that Delaware does not recognize a common law right of privacy for a deceased individual or the family members of the decedent.

This Court accepted Mrs. Lawson's interlocutory appeal of the Memorandum Opinion and Order. Mrs. Lawson then filed a motion seeking to stay the effect of the Memorandum Opinion and Order pending the outcome of this appeal. Mrs. Lawson also filed a motion for all briefs and appendices to be filed under seal. This Court entered an Order granting Mrs. Lawson's Motion to Stay and Motion to Seal.

We have concluded that Mrs. Lawson is entitled to permanent injunctive relief. Our decision is based upon the applicable Delaware statutes. Therefore, it is unnecessary to address the common law right of privacy basis for her claim.

### Facts [2]

On February 15, 2005, Mr. Lawson died in a car fire in Rehoboth Beach, Delaware. Mr. Lawson's death was initially investigated by both the City of Rehoboth Beach Police Department (the "Police Department") and the State Fire Marshal (the "Fire Marshal"). At approximately 4:30 p.m., Mr. Lawson's body was removed from the scene by an agent of the Office of the Chief Medical Examiner.

On February 17, 2005, Assistant State Medical Examiner Judith G. Tobin, M.D. performed an autopsy on Mr. Lawson's body. Neither Lisa Lawson, Mr. Lawson's widow, nor anyone else from his family consented to the autopsy. Nor did the State Attorney General's office request it. However, the Medical Examiner has the discretion to perform an autopsy without such consent or request.[3]

In the course of that autopsy procedure, Dr. Tobin took samples from Mr. Lawson's body in order to perform toxicology tests. On February 17, 2005, Dr. Tobin completed a pending Certificate of Death for Mr. Lawson and filed it with the Office of Vital Statistics. On March 14, 2005, the toxicology report was completed on the samples drawn from Mr. Lawson's body. Dr. Tobin then completed the autopsy report and sent the final Certificate of Death to the Office of Vital Statistics. The toxicology report, autopsy report, Certificate of Death, and the related examination record, contain information relating to the circumstances and cause of Mr. Lawson's death. Those items will be referred to collectively in this opinion as the "Autopsy Information."

After conducting the autopsy, Dr. Tobin concluded that Mr. Lawson's death was an accident, and that no further investigation was warranted. On March 17, 2005, Dr. Tobin faxed a copy of the examination record and autopsy report to the Police Department. Dr. Tobin wrote on the fax cover sheet that the transmittal was "Confidential Information."

The Police Department has stated that no "foul play" was involved in Mr. Lawson's death. Similarly, the Fire Marshal has preliminarily concluded that there was no foul play involved in the car fire, and that the fire was an accident. Neither of these agencies has referred the matter to

---

2. These facts are taken from the Court of Chancery's Memorandum Opinion, which relied upon the Joint Pre–Hearing Statement filed by the parties.

3. *See* Del.Code Ann. tit. 29, § 4707(b) (2003).

the Attorney General's office for further investigation.

The circumstances surrounding Mr. Lawson's death have been widely reported in the Delaware press. However, the Autopsy Information has not been made public. In order to clarify the situation and dispel certain rumors, Chief Keith Banks of the Police Department has stated that he would like to issue a press release containing information from the autopsy and examination record relating to the cause of death. In addition, the general policy of the Fire Marshal's office is to share its reports with insurance companies. The Fire Marshal intends to do so with its report of Mr. Lawson's death.

Mrs. Lawson brought this suit to enjoin the Police Department and the Fire Marshal from publicly disclosing information contained in the autopsy, Certificate of Death, toxicology report, and the examination record that Mrs. Lawson contends is protected, private information. Mrs. Lawson seeks a preliminary and permanent injunction precluding the defendants from disclosing this information to the public.

### Standard of Review

This Court generally reviews the denial of a motion for a preliminary injunction under the abuse of discretion standard. However, the Court of Chancery's legal conclusions are subject to *de novo* review.[4] In this appeal, Mrs. Lawson challenges the Court of Chancery's legal conclusions concerning the interpretation of several Delaware statutes and the scope of the common law right to privacy in Dela-

ware. Accordingly, the applicable standard of appellate review is *de novo*.

### Medical Examiners Statute

Title 29, Chapter 47 of the Delaware Code is titled "Medical Examiners." This statute sets forth the powers and responsibilities of the Chief Medical Examiner and his or her Assistants and Deputies (collectively, "Medical Examiners"), including the power to investigate deaths and conduct autopsies.[5] Under title 29, sections 4707(e) and 4710(b) and (c), only certain persons are *entitled* to receive the report of an autopsy performed by the Medical Examiner: the next of kin and the Attorney General.[6]

Title 29, section 4707(e) of the Delaware Code provides that upon written request:

the next of kin of the deceased shall receive a copy of the postmortem examination report, the autopsy report and the laboratory reports, unless there shall be a criminal prosecution pending in which case no such reports shall be released until the criminal prosecution shall have been finally concluded ... [7]

Accordingly, Mrs. Lawson was entitled to, and has received, a copy of the autopsy report issued in connection with Mr. Lawson's death.

Under to title 29, sections 4710(b) and (c), the Attorney General may also receive copies of autopsies and other records if: (i) further investigation is deemed advisable in the judgment of the Medical Examiner; or (ii) the Attorney General requests any such records from the Medical Examiner.[8] According to Dr. Tobin's deposition testimony, the Attorney General did not re-

---

4. *SI Mgmt. L.P. v. Wininger,* 707 A.2d 37, 40 (Del.1998) (citing *Kaiser Aluminum Corp. v. Matheson,* 681 A.2d 392, 394 (Del.1996)); *see also Unitrin, Inc. v. American Gen. Corp.,* 651 A.2d 1361, 1385 (Del.1995) (citing *Merrill v. Crothall–American, Inc.,* 606 A.2d 96, 99 (Del. 1992)).

5. Del.Code Ann. tit. 29, §§ 4706 and 4704(b).

6. Del.Code Ann. tit. 29, §§ 4707(e) and 4710(b), (c).

7. Del.Code Ann. tit. 29, § 4707(e).

8. Del.Code Ann. tit. 29, § 4710(b), (c).

quest copies of the autopsy report, nor did she send copies to the Attorney General, because she concluded that Mr. Lawson's death was accidental.

Mrs. Lawson argues that under the Medical Examiners Statute the Medical Examiner has the authority to provide autopsy reports or information derived therefrom *only* to the Attorney General and the family of the decedent. The Court of Chancery acknowledged that that ". . . is a possible reading of this law." Nevertheless, the Court of Chancery concluded that:

> reading this statute to strictly limit the ability of the Medical Examiners to share information with other officials would doubtless interfere with the normal functioning of Medical Examiners by preventing them from sharing potentially important information with police in the course of an investigation, except through the intermediation of the Attorney General.

In this case, the Police Department and the Medical Examiner both properly began an investigation that required them, in the performance of their duties, to share information about the cause of Mr. Lawson's death. The interpretation of the statute advocated by Mrs. Lawson would effectively end communication, between the Medical Examiner, conducting a statutorily mandated investigation into the medical cause of death and the police, unless the Attorney General intervened. The Court of Chancery noted that "such an interpretation of the statute would provide great protections for the privacy of certain information contained in autopsy reports and related documents, but would do so only at great cost to efficient communication be-

tween and among responsible public officials."

The record reflects how the Medical Examiner's Office conducts its investigations. Dr. Tobin testified that she typically begins her investigation by speaking to the police officers investigating the case. Dr. Tobin also testified that she regularly takes blood samples and gives them to the police so that DNA and blood typing tests can be performed. Thereafter, it is typical for the Medical Examiner and police departments to routinely exchange information on a confidential basis during the course of an investigation.

Dr. Tobin is familiar with the Medical Examiners Statute, having been a Medical Examiner for decades. She considers autopsy reports to be confidential. That is why, when she sent Mr. Lawson's autopsy report to the Police Department, she marked it "Confidential Information." Dr. Tobin did not consider it a violation of the Medical Examiners Statute, however, to give the autopsy report to the Police Department, on a confidential basis, to explain the results of her investigation.

The Court of Chancery concluded that the relevant provisions of the Medical Examiners Statute neither require nor support an interpretation that would prevent a Medical Examiner from sharing Autopsy Information with a police agency on a confidential basis, when that Medical Examiner is discharging the statutory mandate to investigate the medical cause of death. We agree. Nevertheless, we disagree with the Court of Chancery's holding that the Medical Examiners Statute creates no privacy right in the Autopsy Information under the circumstances of Mr. Lawson's death.[9]

9. In reaching that conclusion, the Court of Chancery relied on the fact that the information in an autopsy report is routinely admitted into evidence in both criminal and civil matters. Such evidentiary rulings are based upon circumstances that are not relevant to this proceeding, e.g., criminal prosecutions or civil actions by a decedent's personal representative against a third party.

We note that the Attorney General has issued an opinion that concludes autopsy reports are exempt from the Delaware Freedom of Information Act as *investigatory* files.[10] Investigatory files are not public information.[11] *A fortiori*, any information gathered during the course of an investigation is not public information. Therefore, the Medical Examiners Statute permitted Dr. Tobin to communicate with the Police Department on a confidential basis during the course of her investigation into the medical cause of Mr. Lawson's death.

Accordingly, any Autopsy Information that Dr. Tobin gathered and disclosed to the Police Department during her investigation into the medical cause of Mr. Lawson's death remained confidential. We hold, therefore, that when the Police Department received the autopsy report from Dr. Tobin on a confidential basis to explain the results of her investigation, it was not public information and it may not be disclosed in whole or in part.

### Health Record Privacy Statute

■ The General Assembly's intention to protect the privacy of Delaware's citizens is reflected, in part, in the statutes that provide confidentiality for investigatory files,[12] autopsy reports [13] and death certificates.[14] Those privacy concerns were ratified, reinforced and enhanced with the 2002 passage of Delaware's Health Record Privacy Statute. At the time of its enactment, that legislation was described as creating "Delaware's first health record privacy statute, ensuring that health infor-

mation gathered by the state about Delawareans will not be used or disclosed improperly." [15] In her signing message, Governor Ruth Ann Minner stated "[t]he bill also gives Delaware residents the most privacy protection of any state in the country for their health information that is in the hands of the state." [16]

Section 1232 of the Health Record Privacy Statute provides that "[p]rotected health information is not public information ... and may not be disclosed without the informed consent of the individual (*or the individual's lawful representative*) who is the subject of the information except as expressly provided by statute." [17] In relevant part, title 16, section § 1230(4) of the Delaware Code defines "protected health information" as:

> any information, whether oral, written, electronic, visual, pictorial, physical or any other form, that relates to an individual's past, present or future physical or mental health status, condition, treatment, service, products purchased, or provision of care and that reveals the identity of the individual whose health care is the subject of the information .... [18]

This unambiguous language protects the information contained in an autopsy report from public disclosure. In fact, the State defendants acknowledge in their Answering Brief: "It is undisputed that the medical information in Mr. Duane Lawson's autopsy report is protected health information under 16 *Del. C.* § 1230(4)."

---

10. *See* Op. Att'y Gen. No. 05–IB16 (June 22, 2005).

11. Del.Code Ann. tit. 29, § 10002(g)(3).

12. Del.Code Ann. tit. 29, § 10002(g)(3).

13. Del.Code Ann. tit. 29, § 4701.

14. Del.Code Ann. tit. 16, § 3110.

15. Delaware Governor's Message, July 3, 2002 (Fact Sheet).

16. *Id.*

17. Del.Code Ann. tit. 16, § 1232(a) (2003) (emphasis added).

18. Del.Code Ann. tit. 16, § 1230(4).

The Court of Chancery determined, however, that the language of section 1232(e) "exempts what would otherwise be confidential health information from the scope of section 1232 when that information is contained in an autopsy report, death certificate or 'related documents.'" Section 1232(e) provides:

> (e) *Deceased individuals.*—Nothing in this subchapter shall prohibit the disclosure of protected health information:
>
> (1) In a certificate of death, autopsy report or related documents prepared under applicable laws or regulations;
>
> (2) For the purposes of identifying a deceased individual;
>
> (3) For the purposes of determining a deceased individual's manner of death by a medical examiner; or
>
> (4) To provide necessary information about a deceased individual who is a donor or prospective donor of an anatomical gift.[19]

Mrs. Lawson, as Mr. Lawson's lawful representative, argues that section 1232(e) means that information that would otherwise be unavailable as "protected health information" can be released *for the purpose of creating the death certificate or autopsy report*—but that the information contained in a death certificate or autopsy report, once created, otherwise remains protected. We agree. Sections 1232(e)(1) and (3) only permit disclosure of public health information *in* a death certificate or an autopsy report and only "[f]or the purposes of determining a deceased individual's manner of death by a medical examiner."[20]

Nothing in section 1232(e) changes the mandate of section 1232(a) that protected health information "is not public information." Given the comprehensive restrictions of section 1232(a), without the statutory authority provided in section 1232(e) allowing disclosure of this information *in* a death certificate and autopsy report, such disclosure would be prohibited. Therefore, section 1232(e) is not only consistent with the other provisions of section 1232, but also is required in order to allow a Medical Examiner or attending physician to state a cause and manner of death *in* a death certificate and/or an autopsy report.

The limited scope, and plain meaning, of section 1232(e) is further reflected in section 1232(g), entitled "Secondary disclosures," which prohibits the secondary disclosure of protected health information.[21] Section 1232(g) provides:

> No person to whom protected health information has been disclosed pursuant to this subchapter shall disclose the information to another person except as authorized by this subchapter. This section shall not apply to:
>
> (1) The individual who is the subject of the information;
>
> (2) The individual's parents, legal guardians or other persons lawfully authorized to make health care decisions for the individual where the individual who is the subject of the information is unable to give legal consent pursuant to subsection (f) of this section; or
>
> (3) Any person who is specifically required by federal or state law to disclose the information.[22]

Section 1232(g) reaffirms the comprehensive restrictions imposed on the disclosure of protected health information and makes clear that protected health information can only be disclosed in the manner expressly provided by section 1232. Ac-

---

19. Del.Code Ann. tit. 16, § 1232(e).

20. *Id.*

21. Del.Code Ann. tit. 16, § 1232(g).

22. *Id.*

cordingly, we hold that under the circumstances of Mr. Lawson's death, section 1232(g) prohibits the public disclosure of any Autopsy Information by a "person to whom [that] protected health care information has been disclosed."[23] That prohibition applies to the defendants in this proceeding.

### Statutes Protect Family Privacy

People frequently die of natural causes or by accident in private and public places that are not health care facilities and when they are not being attended by a physician. Under those circumstances, the Medical Examiners Statute provides for a Medical Examiner to take charge of the body and determine the medical cause of death by performing an autopsy, if necessary.[24] The decedent's family or lawful representative cannot prevent those activities. That does not mean, however, that a person who dies by accident or natural causes becomes subject to having the details of his or her health condition exposed to the public simply because the statute directs a Medical Examiner to determine and certify the person's cause of death. In those circumstances, as we have explained, the Medical Examiner Statute and the Health Record Privacy Statute protect the families of those deceased persons by prohibiting the public disclosure of information.

The Medical Examiner determined that Mr. Lawson's death was an accident. Therefore, public disclosure of the Autopsy Information is prohibited by the Medical Examiners Statute and the Health Record Privacy Statute. As Mr. Lawson's next of kin and lawful representative, Mrs. Lawson has standing to enforce the privacy protections of both statutes. Accordingly, it is not necessary for this Court to decide Mrs. Lawson's claim for injunctive relief grounded upon her alleged common law right of privacy.[25]

We have concluded that Mrs. Lawson has a privacy interest that is protected by Delaware statutes. In recognizing the personal privacy protections provided for a decedent's family members by a federal statute, the United States Supreme Court noted: "[t]he power of Sophocles' story in Antigone maintains its hold to this day because of the universal acceptance of the heroine's right to insist on respect for the body of her brother."[26] In providing the statutory protections that have been invoked by Mrs. Lawson, the General Assembly has recognized concepts that have been respected in almost all civilizations from time immemorial: "[f]amily members have a personal stake in honoring and mourning their dead and objecting to unwarranted public exploitation that, by intruding upon their own grief, tends to

23. *Id.*

24. Del.Code Ann. tit. 29, §§ 4706, 4707.

25. Nevertheless, the United States Supreme Court has recognized that the rationale in a century old common law decision by the New York Court of Appeals applies with equal force to statutory privacy protections that are extended to a decedent's family members:

It is the right of privacy of the living which it is sought to enforce here. That right may in some cases be itself violated by improperly interfering with the character or memory of a deceased relative, but it is the right

of living, and not that of the dead, which is recognized. A privilege may be given the surviving relatives of a deceased person to protect his memory, but the privilege exists for the benefit of the living, to protect their feelings, and to prevent a violation of their own rights in the character and memory of the deceased.

*Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 168–69, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004) (quoting *Schuyler v. Curtis,* 147 N.Y. 434, 42 N.E. 22, 25 (1895)).

26. *Id.* at 168, 124 S.Ct. 1570 (*citing Antigone of Sophocles,* 8 Harvard Classics: Nine Greek Dramas 255 (C. Eliot ed. 1909)).

degrade the rites and respect they seek to accord to the deceased person who was once their own." [27]

### Conclusion

The judgment of the Court of Chancery is reversed. This matter is remanded for the entry of a permanent injunction in accordance with this opinion.

---

**27.** *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 168, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004).