IN THE SUPREME COURT OF THE STATE OF DELAWARE

DELAWARE MANUFACTURED HOME OWNERS ASSOCIATION, GEORGE MAKDAD, and BREANNA WALTZ, §
§
§
§
§

No. 408, 2017

Court Below: Court of Chancery of the State of Delaware

Plaintiffs Below, Appellants, §
§
§

C.A. No. 2017-0111

v.

INVESTORS REALTY, INC., ST. JONES LANDING, LLC, K-4 MANAGEMENT, and DELAWARE MANUFACTURED HOME RELOCATION AUTHORITY,

Defendants Below, Appellees.

Submitted: April 11, 2018
Decided: May 31, 2018

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

On this 31st day of May 2018, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) This case arises from a change in use of a manufactured home community. Prior to the change, each tenant placed a manufactured home which the tenant owned upon a lot owned by the landlord and leased to the tenant. The change converted the community into one in which the tenant leased both the lot and

the dwelling unit from the landlord. Appellants, Delaware Manufactured Home Owners Association ("the Association"), George Makdad, and Breanna Waltz, appeal from a Court of Chancery bench ruling which denied their motion for an injunction to prevent the change of use. Appellants contend the Court of Chancery erred by finding that the change was legally permissible; that Appellees' notice to tenants of the change was legally sufficient; and that the Association had no standing to pursue claims.

(2) Appellee St. Jones Landing, LLC, ("St. Jones") is the owner of the land which is the subject of this litigation. As mentioned, it operated as a "land lease only" community in which the tenant owned the manufactured home but paid rent to St. Jones for the lot on which the home was placed. Appellee K-4 Management ("K-4") was the property management company which ran the day-to-day operations of St. Jones. Appellee Investors Realty, Inc., is a dealer of manufactured homes but had no management or ownership role in St. Jones.

(3) On March 4, 2016, K-4 sent notice letters to the St. Jones tenants leasing Lots 1-10 and 62-65 ("First Notice"). The First Notice advised the tenants that St. Jones and K-4 planned to change the use of the St. Jones land upon which their manufactured homes were situated. The tenants were notified that their land lease agreements with St. Jones were being terminated effective March 31, 2017.

2

Sent along with the First Notice was a Relocation Plan. Simultaneously with the service of the First Notice on the tenants, K-4 sent a copy of the First Notice and the Relocation Plan to the Delaware Manufactured Home Relocation Authority ("the Authority"). This was to be Phase I of the land use change.

(4) On August 22, 2016, K-4 sent notice letters to the St. Jones tenants leasing Lots 11-16, 41, and 50-56 ("Second Notice"). The Second Notice advised the tenants of the proposed change in use and notified the tenants that their land lease agreements with St. Jones were being terminated effective August 31, 2017. A Relocation Plan accompanied the Second Notice. As was done with the First Notice, K-4 sent a copy of the Second Notice and Relocation Plan to the Authority. This was to be Phase II of the land use change.

(5) The lots in Phase I and Phase II were being changed from a land lease only arrangement to a full rental arrangement under which St. Jones would own the dwelling unit and the lot–both of which would be rented to a tenant. The First and Second Notices informed tenants that St. Jones was changing from a manufactured home park to an "apartment style lease project."[1]

(6) On February 14, 2017, Appellants filed a Verified Complaint, Motion for Expedited Proceedings, and Motion for Preliminary Injunction against

---

[1] App. to Appellant's Opening Brief at A21 & A36.

3

Appellees. The injunction request sought to stop the eviction of the Phase I and Phase II tenants, stop all relocation payments from the Authority, and stop St. Jones from doing any new construction to replace the current manufactured homes with new ones. Appellants sought penalties for Appellees alleged violations of the Manufactured Home Owners and Community Owners Act ("Act").[2]

(7) The Court of Chancery heard oral argument on the Motion for Preliminary Injunction on September 6, 2017. In its decision on that motion, the Court of Chancery found: St. Jones' intended change of the use of the land was a permissible basis for terminating the tenants' leases under the Act; the First and Second Notices complied with the Act; Appellants failed to demonstrate irreparable harm; the Association lacked organizational standing; and the injunctive claims were moot as all tenants, including Appellants Makdad and Waltz, because they had moved or were in the process of voluntarily moving from St. Jones. The parties then submitted, and the Court of Chancery approved, a stipulation for entry of final judgment. This appeal followed.

(8) All tenants in Phase I and Phase II of St. Jones, including Appellants Makdad and Waltz, have relocated, with the assistance of relocation funds made available by the Authority. Relocation funds are paid under a statutorily created

---

[2] 25 *Del. C.* §§ 7001–7027.

program of state financial assistance to tenants who have to relocate due to a change in the use of a manufactured home community. The land–lease only to landlord-tenant change has been completed.

(9) We review the denial of a motion for a preliminary injunction under the abuse of discretion standard.[3] However, we review the Court of Chancery's legal conclusions *de novo*.[4] In order for the Court of Chancery to issue a preliminary injunction the plaintiff must show: a reasonable probability of success on the merits; that irreparable harm will follow should the injunctive relief not be granted; and that the equities balance in plaintiff's favor.[5]

(10) In this appeal, Appellant's first two arguments challenge the Court of Chancery's legal conclusions in interpreting several provisions of the Act. Issues of statutory construction and interpretation are reviewed *de novo*.[6] First, we must determine whether the statute is ambiguous.[7] If it is not, we assign the statute its plain meaning.[8] If the statute is susceptible to two reasonable interpretations, then we must consider the statutory scheme as a whole and interpret the statute in a

---

[3] *Lawson v. Meconi*, 897 A.2d 740, 743 (Del. 2006).
[4] *Id.* (citations omitted).
[5] *SI Management L.P. v. Wininger*, 707 A.2d 37, 40 (Del. 1998) (citations omitted).
[6] *CML V, LLC v. Bax*, 28 A.3d 1037, 1040 (Del. 2011).
[7] *Id.* at 1041.
[8] *Id.*

5

manner that will "produce a harmonious whole."[9]

(11) Section 7010(a)(1) of the Act regulates termination of rental agreements in manufactured home communities and changes in the use of such communities. Specifically, of relevance to this case, it allows a landlord to terminate a lot rental agreement in a manufactured home community when the landlord intends to make a "change in the use of the land" in good faith.[10]

(12) The Appellants first argue that the Court of Chancery erred in finding the Appellee's proposed change in the use of St. Jones Landing to be a "change in the use of the land."[11] They argue that a "change in the use of the land" means a change in a subdivision plan or a zoning designation, neither of which have occurred here.[12]

(13) The phrase "change in the use of the land" is not explicitly defined by the Act. The Appellants draw their definition from § 7010(c)(2). That section provides that *prima facie* evidence exists that the owner did not intend in good faith to change the use of the land where the owner resumes lot rentals for manufactured homes within seven years of terminating tenants leases and did not make "a material

---

[9] *Id.*
[10] 25 *Del. C.* § 7010(a)(1).
[11] *Id.*
[12] § 7010(c)(2).

6

and bonafide effort to change the subdivision plan or zoning designation, or both."[13]

(14) The Court of Chancery rejected the Appellant's contention that a change in the use of the land must include a material and bonafide effort to change a subdivision plan or zoning designation. It reasoned that a change from owner occupied manufactured homes on rented lots to landlord ownership of both the lot and the dwelling unit resulted in a materially different use of the land. It also reasoned that this conclusion was supported by the fact that the legal relationship between St. Jones and the residents would no longer be governed by the Act. Since the relationship between St. Jones and the residents would now be one purely of landlord-tenant, the Residential Landlord-Tenant Code in Part III of Title 25 would apply, not the Act, which is in Part VI of Title 25. We find no error in the Court of Chancery's reasoning and agree that the change in use involved here is a change in use under the Act. Title 25 § 7010(c)(2) simply provides a statutory *prima facie* instance where the landowner did not intend in good faith to change the use of the land. It is not applicable to the facts of this case.

(15) The Appellants next argue that the Court of Chancery erred in finding that Appellees' First and Second Notices complied with the notice requirements in the Act. They argue § 7010(b)(1)'s requirement that the landowner's notice

---

[13] *Id.*

"inform[] the tenants of the intended change" in the use of the land means that the landlord must do so in specific, detailed terms which explain the exact manner in which the use of the land will be changing. They argue that the notices in this case failed to meet that standard.

(16) Section 7010(b)(1) requires a landlord who intends to undertake a change in the use of the land to "[p]rovide all tenants affected with at least a 1-year termination or nonrenewal notice, which informs the tenants of the intended change of use and their need to secure another location for their manufactured homes."[14] In this case, the First and Second Notices informed the tenants that the "intended future use is an apartment style lease project."[15]

(17) The Court of Chancery ruled that § 7010(b)(1) "merely requires a landlord to provide its tenants with a notice that informs the tenants of the intended change of use and of their need to secure another location for their manufactured homes. No degree of specificity is either expressed or implied in that provision."[16] We agree that no degree of specificity is required by the statute. We need not decide whether the notice can simply inform the tenants that a change in use is intended without more. We are satisfied in this case that informing the tenants that the

---

[14] § 7010(b)(1).
[15] App. to Appellant's Opening Brief at A21 & A36.
[16] Am. Ex. A to Appellant's Opening Brief at 50.

intended use was an apartment style lease project satisfies the notice requirement. The Appellants' contention that the statute requires a more detailed statement is rejected.

(18) Finally, the Association argues the Court of Chancery erred in finding it did not have standing to pursue the claims alleged in the verified complaint. All parties seem to agree that the individual Appellants had standing to assert the claims brought here. Given this and our disposition of the Appellants' first two claims, we need not address the Association's standing issue.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

9