# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEVEN B. TRUSA, individually and Derivatively on behalf of XION Management, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 12071-VCMR |
| NORMAN NEPO, BRYAN COLLINS, and FARHAAN MIR, | ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| XION MANAGEMENT, LLC, | ) ) | |
| Nominal Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: January 11, 2017
Date Decided: April 13, 2017

Kevin A. Guerke, Esquire, SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware; *Attorney for Plaintiff.*

Paul D. Brown, Esquire and Joseph B. Cicero, Esquire, CHIPMAN BROWN CICERO & COLE LLP, Wilmington, Delaware; *Attorneys for Defendant Norman Nepo.*

**MONTGOMERY-REEVES, Vice Chancellor.**

In this action, a creditor of a limited liability company alleges that the company's managing members lured him into providing a loan to the company through various misrepresentations regarding the company's strategies and omissions of conflicts of interest. The creditor asserts that the managing members then used the loan for inappropriate purposes, including payments to insiders and affiliates, depleted the company's assets, and rendered the company unable to pay back the creditor's loan.

The creditor asserts claims for breaches of fiduciary duty, fraud, fraudulent transfer, aiding and abetting fraud, and conspiracy to commit fraud. The creditor also seeks dissolution of the company. One of the managing members moves to dismiss the action for lack of standing, duplication, and failure to state a claim. For the reasons discussed herein, I conclude that the creditor lacks standing to bring the fiduciary duty and statutory dissolution claims; he does not state a claim for equitable dissolution; and the declaratory judgment claim is duplicative. I also conclude that the creditor fails to state a claim for fraud, fraudulent transfer, aiding and abetting fraud, or conspiracy to commit fraud. Therefore, I grant the motion to dismiss in its entirety.

## I.    BACKGROUND

The facts are drawn from the Amended Verified Complaint (the "Complaint") and the documents incorporated by reference therein.[1]

### A.    Parties

Plaintiff Stephen B. Trusa is a resident of the State of New York and lender to XION Management LLC ("XION" or the "Company"), formerly known as IIG Management, LLC ("IIG"), a Delaware limited liability company.  XION purportedly "specialize[d] in structural finance with a focus on providing corporate debt.  It claimed to be in the business of issuing short-term, secured notes to investors and using the proceeds to provide debt funding to U.S. publically traded companies."[2]

Defendants Norman Nepo, Bryan Collins, and Farhaan Mir are managing members of XION (collectively, the "Managing Members").  Nepo and Collins are residents of the State of Florida, and Mir is a resident of Great Britain.

---

[1]    On a motion to dismiss under Rule 12(b)(6), the Court may consider a document outside the pleadings if "the document is integral to a plaintiff's claim and incorporated into the complaint" or "the document is not being relied upon to prove the truth of its contents."  *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996); *see Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013).

[2]    Am. Compl. ¶ 6.

**B.** **Facts**

In 2010, the Managing Members approached Trusa to request a loan for XION. In connection with their efforts, the Managing Members allegedly "gave presentations, made sales pitches, and provided other information" to convince Trusa to invest in their company. Trusa claims that these presentations included "material representations" regarding XION's business and the three Managing Members.[3] Specifically, the Managing Members told Trusa that: (1) one hundred percent of Trusa's and other lenders' money would be "invested in bonds convertible into common stock of publicly traded companies"[4]; (2) Nepo was making "significant personal investments in XION" as the "anchor investor"[5]; (3) Trusa and "other lenders would be secured with XION debentures and that their underlying assets would establish multiple cash streams to mitigate risk and ensure high levels of cash reserve to service secured corporate notes"[6]; and (4) Trusa and other lenders "would receive monthly reports showing the securities in the publicly traded companies securing the investment."[7] Additionally, the Managing Members

---

[3] *Id.* ¶ 7.

[4] *Id.* ¶ 13.

[5] *Id.* ¶¶ 14, 9.

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 12.

4

purportedly touted Collins's extensive investment experience and responsibility for "negotiating debenture conversion terms, managing legal drafting, and supervising share liquidation through XION's institutional trading accounts."[8]

In October of 2010, in reliance on these alleged representations, Trusa executed a Loan and Security Agreement (the "Agreement") and Secured Promissory Note (the "Note," collectively, with the Agreement, the "Loan") of $200,000 to XION. The Agreement, with IIG/XION as Borrower and Trusa as Lender, contains a power of attorney provision, which states:

> [T]he Borrower hereby irrevocably appoints the Lender, with full power of substitution and revocation, the Borrower's attorney-in-fact effective upon occurrence of an Event of Default, with full authority in the place and stead of the Borrower and in the name of the Borrower or otherwise, from time to time in the Lender's discretion to take any action and to execute any instrument which the Lender may deem reasonably necessary or advisable in pursuing its remedies set forth herein, including, without limitation, to receive, endorse and collect all instruments made payable to the Borrower representing any interest payment, dividend or other distribution in respect of the Collateral of any part thereof. This power of attorney is irrevocable and shall be deemed to be coupled with an interest and shall survive any disability of the Borrower.[9]

---

[8]    *Id.* ¶ 8. The Amended Complaint lists other alleged misrepresentations, but Plaintiff fails to raise any of them in his briefiing. Therefore, I do not address them.

[9]    *Id.* ¶ 44; Pl.'s Answering Br. Ex. D, at § 7.2(g) (the "Loan and Security Agreement").

5

The "Remedies" section of the Agreement provides, in relevant part, that the Lender (1) may, in the event of default, sue in equity for specific performance of any covenant or condition contained in the Agreement, cease disbursing advances under the Note, or declare the unpaid balance of the Note together with all accrued interest payable; (2) may sell all or any part of the collateral at a private sale; (3) may restrict prospective purchasers of the collateral, provide purchasers business and financial information, and offer the collateral for sale with or without first employing an appraiser, investment banker, or broker; and (4) shall have all rights, remedies, and recourse granted pursuant to the Note or existing at common law or equity.[10]

The Agreement also contains the following pertinent provisions:

> 2.3 Use of Proceeds. Borrower shall use the proceeds of the Loan to fund and/or purchase direct and/or third party convertible debt, debentures, and bridge loans, as determined by Borrower in its sole discretion.
>
> 4.5 Full Disclosure. All information furnished by Borrower to Lender concerning Borrower, its financial condition, or otherwise for the purpose of obtaining credit or an extension of credit, is, or will be, at the time the same is furnished, accurate and correct in all aspects and complete insofar as completeness may be necessary to give lender a true and accurate knowledge of the subject matter.
>
> 4.12 Representations True. No representation or warranty by Borrower contained herein or in any certificate or other document furnished by Borrower pursuant hereto contains any untrue statement of material fact or omits to state a

---

[10] Loan and Security Agreement § 7.2(a)-(d).

> material fact necessary to make such representation or warranty not misleading in light of the circumstances under which it was made.[11]

Attached as Exhibit A to the Agreement is a Borrower's Certificate (the "Borrower's Certificate") executed by Nepo, which states that "all representations and warranties set forth within the Loan Agreement are true and correct as of the date hereof."[12] XION allegedly borrowed a total of $1,100,000 from Trusa and other lenders.

In October 2012, the Loan matured and XION defaulted. After the default, Trusa began to inquire about the activity at XION. "XION, in response, represented to Trusa that it was purportedly pursuing claims against Collins."[13] Trusa learned that at the time of the 2010 representations, Collins owned and controlled Greystone Capital Partners, Inc. ("Greystone") and IBC Funds, LLC ("IBC"), which allegedly created conflicts of interest with XION. Through these other companies, Collins acquired convertible bonds in the same companies as XION—facts of which the Managing Members purportedly were aware but did not disclose to Trusa. Additionally, Trusa alleges that the Managing Members did not use one hundred percent of the Loan to purchase convertible bonds in publicly traded companies as they had represented. Instead, the Managing Members paid themselves and funneled

---

[11]     *Id.* §§ 2.3, 4.5, 4.12.

[12]     *Id.* Ex. A.

[13]     Am. Compl. ¶ 30.

7

the investment proceeds to entities they owned, controlled, or from which they profited. Trusa asserts that of the $1,100,000 loaned to XION, "only $682,500 [is] observable on documentation in SEC filings."[14] XION also allegedly never "obtained secured collateral backing the Loan nor provided monthly reports identifying the secured collateral."[15] Moreover, the Managing Members allegedly did nothing to protect XION during the economic decline despite the fact that Collins "took action to make money and prevent losses for his other companies,"[16] including negotiating better terms and converting certain bonds for these companies. Consequently, XION's financial position deteriorated.

On July 2, 2014, counsel for XION informed Trusa that he was "presently reviewing all documents and determining the best course of action."[17] But, on September 9, 2014, the same counsel informed Trusa that he no longer represented XION and that his firm had "worked diligently on an amicable, confidential asset sale/settlement which did not conclude due to the non-performance of the other party."[18] The e-mail also stated that XION was engaging other counsel in order to

---

[14]     *Id.* ¶ 16.

[15]     *Id.* ¶ 21.

[16]     *Id.* ¶ 22.

[17]     *Id.* ¶ 31.

[18]     *Id.* ¶ 32.

8

"review litigation options, prepare legal and accounting reports for its lenders, and recover monies due to XION and its lenders."[19]  Trusa subsequently followed up with XION regarding its "pursuit of Collins," and on October 30, 2014, Mir replied that:

> XION's previous attempts to reach an amicable settlement with debtors and third party service providers were unsuccessful, despite being advised by opposing counsel that a deposit was in escrow.
>
> Consequently, XION is currently working with a securities litigation firm in Miami to establish its claim for pursuing remuneration from debtors and third party service providers.
>
> Shortly once the firm completes formulating its proposal, you will be contacted by the firm and it will be presented to you.
>
> This proposal will include XION restating the notes to you and appointing a trustee to work with the attorneys to manage disbursements to all parties.
>
> Going forward lenders will be provided with transparent updates from the trustee on progress.  The reports will provide full details on legal and financial issues.
>
> The attorneys and trustee will be working with limited resources so they will be establishing communication protocols to limit fees.[20]

---

[19]    *Id.*

[20]    *Id.* ¶ 33.

Mir then told Trusa that XION was "establishing a working relationship" with a commercial litigation specialist who would decide whether to take XION's case. Mir expressed his understanding that "there is a solid path to compensation for XION."[21] On January 19, 2015, Mir told Trusa that XION could not afford the sizable retainer that the Miami litigation law firm required, was "working on alternatives," and would update Trusa on its completed efforts.[22] By August 2015, XION's registered agent had resigned.

Nepo's son, David Nepo, allegedly called Trusa on various dates between April and May 2016. In those conversations, David[23] purportedly represented to Trusa that he and his father had "accumulated sufficient evidence to implicate Collins, a broker dealer, and a law firm in the wrongful scheme."[24] David confirmed "Collins' and others' scheme where a broker dealer aided and abetted Collins and others in a scheme where Collins converted various convertible bonds into publicly traded common stock and Collins' affiliated companies . . . benefitted from more

---

[21]     *Id.* ¶ 34.

[22]     *Id.* ¶ 35.

[23]     Any references to first names are for clarity and no familiarity or disrespect is intended.

[24]     *Id.* ¶ 47.

favorable allocations than investments Collins made for XION."[25]   David represented to Trusa "that he would provide hard evidence of the wrongful conduct he described,"[26] but has failed to do so.

### C.   Procedural History

On April 28, 2015, Trusa filed a complaint in the Delaware Superior Court. XION failed to answer the complaint.  On June 3, 2015, the Superior Court entered a default judgment against XION in the amount of $363,504.74, plus post-judgment interest and costs and fees.[27]  On June 26, 2015, Trusa served XION with discovery requests, and XION did not respond.  The Superior Court granted Trusa's motion to compel responses to the discovery on September 11, 2015.  XION is in contempt of that order.[28]

Trusa filed this action on March 4, 2016.  Thereafter, Nepo filed his initial motion to dismiss on May 23, 2016.  Trusa amended the Complaint on July 21, 2016. Nepo filed his motion to dismiss the amended complaint (the "Motion to Dismiss") on August 4, 2016.  Following briefing by the parties, this Court held oral argument on the Motion to Dismiss on January 11, 2017.

---

[25]     *Id.* ¶ 48.

[26]     *Id.* ¶ 50.

[27]     *Id.* ¶ 39.

[28]     *Id.* ¶ 41.

**D. Parties' Contentions**

Trusa asserts eight counts against the Managing Members. Count I seeks a declaration from the Court that: (1) the Managing Members breached their fiduciary duties to XION; (2) Trusa has standing to pursue breach of fiduciary duty claims against the Managing Members; (3) XION is insolvent; (4) it is not reasonably practicable for XION to carry on the purpose of its existence; (5) XION should be dissolved; and (6) a trustee or receiver should be appointed. Count II alleges that Collins, Nepo, and Mir breached their fiduciary duties. Count III alleges a breach of fiduciary duty against Collins for failing to put XION's best interests above his own. Count IV seeks dissolution of XION because it is insolvent, has been abandoned by the managing members, and cannot carry on the purpose of its existence.

Count V asserts fraud against the Managing Members for knowingly making false representations and intentionally concealing Collins's conflicts of interest in order to induce Trusa to loan money to XION. Count VI asserts a claim for fraudulent transfer against the Managing Members. Count VII alleges that the Managing Members conspired to commit fraud in their representations to Trusa to attain his loan. Count VIII alleges aiding and abetting against the Managing Members for assisting in the perpetration of the fraud.

12

In his Motion to Dismiss, Nepo contends that the entire Complaint should be dismissed. First, Nepo argues that Trusa, as a creditor, lacks standing to assert breach of fiduciary duty claims or seek dissolution of the company. Second, Nepo maintains that the declaratory judgment claim is duplicative of the other claims and should be dismissed. Third, Nepo argues that the Complaint fails to state a claim for fraud, fraudulent transfer, conspiracy to commit fraud, and aiding and abetting fraud. I discuss each in turn below.

## II. ANALYSIS

Under Court of Chancery Rule 12(b)(6), the Court will dismiss the Complaint if the "plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[29] The Court will accept all well-pled allegations of fact and draw all reasonable inferences in favor of the plaintiff; but, the Court need not accept factually unsupported, conclusory allegations.[30]

### A. Trusa Does Not Have Standing to Pursue Fiduciary Duty Claims

Trusa asserts derivative breach of fiduciary duty claims against Collins, Nepo, and Mir on behalf of the Company.[31] Trusa argues he may pursue these claims as a

---

[29] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[30] *Id.*; *Price v. E.I. duPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[31] Pl.'s Answering Br. 15-18. Nepo suggests that Trusa attempts to assert direct and derivative breach of fiduciary duty claims. Def.'s Opening Br. 10. In the Complaint, Trusa asks for a declaration that he has standing to pursue both direct

13

creditor of the Company and through the power of attorney granted to him by the Agreement.[32]  For the reasons set forth below, Trusa does not have standing to assert claims for breach of fiduciary duty on behalf of XION.

> **1.**  **Trusa does not have standing as a creditor to assert breach of fiduciary duty claims on behalf of XION**

The Delaware Limited Liability Company Act (the "Act") provides the right and outlines the requirements to bring a derivative action.  Section 18-1001 entitled "Right to bring action" states:

> A member or an assignee of a limited liability company interest may bring an action in the Court of Chancery in the right of a limited liability company to recover a judgment in its favor if managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed.[33]

Section 18-1002, entitled "Proper plaintiff" provides:

> In a derivative action, the plaintiff must be a member or an assignee of a limited liability company interest at the time of bringing the action and

---

and derivative claims against the Managing Members, but in his briefing, he only argues the fiduciary duty claims are derivative, and I fail to see how any of them are direct.  Am. Compl. ¶ 47; Pl.'s Answering Br. 15-18.  Furthermore, because Trusa did not brief these issues, they are waived.  *Emerald P'rs v. Berlin*, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003).

[32]  Pl.'s Answering Br. 15-18.

[33]  6 *Del. C.* § 18-1001.

14

(1) At the time of the transaction of which the plaintiff complains; or

(2) The plaintiff's status as a member or an assignee of a limited liability company interest had devolved upon the plaintiff by operation of law or pursuant to the terms of a limited liability company agreement from a person who was a member or an assignee of a limited liability company interest at the time of the transaction."[34]

Thus, the plain language of the Act provides that only members and assignees may assert derivative claims on behalf of the Company.

In *CML V, LLC v. Bax*, this Court addressed the question of whether a creditor had standing to bring derivative breach of fiduciary duty claims on behalf of an insolvent limited liability company.[35] There, creditor CML V, LLC lent money to JetDirect Aviation Holdings, LLC ("JetDirect"). JetDirect subsequently defaulted on its loan obligations, became insolvent, and purportedly began selling its assets to interested managers.[36] CML V, LLC argued that the individual managers breached their duty of care by being inadequately informed about the financial condition of the company, acted in bad faith by failing to create an appropriate system of internal controls, and breached their duty of loyalty by benefiting from self-interested asset

---

[34] *Id.* § 18-1002.

[35] *CML V, LLC v. Bax ("Bax I")*, 6 A.3d 238 (Del. Ch. 2010).

[36] *Id.* at 240.

15

sales.[37] The Court of Chancery dismissed the derivative claims for lack of standing and held that "under the plain language of Section 18-1002, standing to bring a derivative action is limited to a 'member or an assignee.'"[38] The statute "denies derivative standing to creditors of an insolvent LLC."[39] The Delaware Supreme Court, in its affirmance of that opinion, also construed the Act's language to be unambiguous and "susceptible of only one reasonable interpretation."[40] "Only LLC members or assignees of LLC interests have derivative standing to sue on behalf of an LLC—creditors do not."[41] Thus, as a creditor, Trusa lacks standing to bring the derivative claims he is attempting to assert.[42]

---

[37] *Id.*

[38] *Id.* at 242, 254.

[39] *Id.*

[40] *CML V, LLC v. Bax ("Bax II")*, 28 A.3d 1037, 1043 (Del. 2011).

[41] *Id.*

[42] As this Court explained in *In re Carlisle Etcetera LLC*, creditors have adequate remedies at law to protect their interests through "strong covenants, liens on assets, and other negotiated contractual provisions," as well as the implied covenant of good faith and fair dealing. 114 A.3d 592, 604 (Del. Ch. 2015) (quoting *Prod. Res. Gp., L.L.C. v. NCT Gp., Inc.*, 863 A.2d 772, 789-90 (Del. Ch. 2004) (footnotes omitted)). For example, Trusa could have used his "significant contractual flexibility to protect [his] unique, distinct interests" by bargaining for additional covenants or contractual provisions in the Loan documents, such as "automatic assignment of membership interests upon insolvency clauses." *Bax II*, 28 A.3d at 1043 & n.20. Additionally, "[b]oth state and federal law provide a panoply of remedies in order to protect creditors injured by a wrongful conveyance, including avoidance, attachment, injunctions, appointment of a receiver, and virtually any other relief the circumstances may require." *Carlisle*, 114 A.3d at 604 (quoting

16

**2. The power of attorney clause of the Agreement does not grant Trusa a contractual right to assert breach of fiduciary duty claims on behalf of XION**

The Agreement allows Trusa "to take any action and to execute any instrument which the Lender may deem reasonably necessary or advisable in pursuing its remedies set forth herein."[43] Trusa's argues that this includes the ability to assert derivative claims, but that argument ignores the fact that the power of attorney is expressly limited to pursuing remedies provided in the Agreement. Such remedies include, for example, in an event of default, (1) a suit in equity for "specific performance of any covenant or condition contained in any loan document," (2) the cessation of disbursement of advances under the Note, and (3) a declaration that the unpaid balance of the Loan together with all accrued interest is due and payable.[44] The Agreement additionally provides Trusa with the ability to exercise "all the rights of a secured party under the Code"[45] and sell "all of the Collateral or any part thereof

---

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 199 (Del. Ch. 2006) (footnotes omitted)).

[43] Loan and Security Agreement § 7.2(g).

[44] *Id.* § 7.2(a).

[45] *Id.* § 7.2(b)(i).

17

at private sale and at such price or prices as Lender may reasonably deem satisfactory."[46]

Section 7.2(g) of the Agreement, the power of attorney provision, lists as an example remedy, to "receive, endorse and collect all instruments made payable to the Borrower representing any interest payment, dividend or other distribution in respect of the Collateral or any part thereof."[47] Trusa points to the immediately preceding "including, without limitation" clause in Section 7.2(g) and argues these remedies are not exclusive. Contrary to Trusa's argument, I do not read this clause to grant a broad power of attorney that would allow Trusa to pursue derivative breach of fiduciary duty claims on behalf of XION.[48] And, Trusa does not point to anything in the Agreement that even suggests that the parties intended to provide Trusa with the ability to assert fiduciary duty claims on behalf of the Company. Therefore, Trusa does not have standing to bring the fiduciary duty claims.

---

[46]    *Id.* § 7.2(b)(ii).

[47]    *Id.* at 7.2(g).

[48]    Nepo argues that the contract could not as a matter of Delaware law and policy provide standing to assert derivative claims for breach of fiduciary duty because it is contrary to Section 18-1002, which expressly provides that "[i]n a derivative action, the plaintiff must be a member or an assignee of a limited liability company." 6 *Del. C.* § 18-1002. I need not address that issue because the plain language of the agreement simply does not provide the authority Trusa seeks to assert.

18

## B. Trusa May Not Obtain Dissolution

Trusa seeks dissolution under Sections 18-801 through 18-806 of the Act or, alternatively, equitable dissolution. For the reasons discussed below, Trusa is not entitled to dissolution of XION.

### 1. Trusa does not have standing to pursue a statutory dissolution claim

A statute that is "clear and unambiguous on its face, need not and cannot be interpreted by a court . . . ."[49] "If the statute as a whole is unambiguous, there is no reasonable doubt as to the meaning of the words used and the Court's role is then limited to an application of the literal meaning of the words."[50] Section 18-802 of the Act states, "[o]n application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the limited liability agreement."[51] Because Trusa is neither a member nor a manager, he may not seek dissolution through Section 18-802.

---

[49] *Bax I*, 6 A.3d 238, 241 (Del. Ch. 2010) (quoting *Harrigan v. City of Wilm.*, 2006 WL 258061, at *3 (Del. Super. Jan 5, 2006)).

[50] *Id.* (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985)).

[51] 6 *Del. C.* § 18-802.

19

Trusa argues that under Section 18-805, Trusa may, in his capacity as a creditor, seek the appointment of a receiver for XION because the Company was canceled as a matter of law under Section 18-203(a). Section 18-805 states:

> When the certificate of formation of any limited liability company formed under this chapter *shall be canceled by the filing of a certificate of cancellation* pursuant to § 18-203 of this title, the Court of Chancery, on application of any creditor, member or manager of the limited liability company, or any other person who shows good cause therefor, at any time, may . . . appoint 1 or more persons to be receivers, of and for the limited liability company.[52]

Section 18-203(a) provides, in relevant part:

> A certificate of formation shall be canceled upon the dissolution and the completion of winding up of a limited liability company, or as provided in § 18-104(d) or (i)(4) or § 18-1108 of this title, or upon the filing of a certificate of merger or consolidation or a certificate of ownership and merger if the limited liability company is not the surviving or resulting entity in a merger or consolidation or upon the future effective date or time of a certificate of merger or consolidation or a certificate of ownership and merger if the limited liability company is not the surviving or resulting entity in a merger or consolidation, or upon the filing of a certificate of transfer or upon the future effective date or time of a certificate of transfer, or upon the filing of a certificate of conversion to non-Delaware entity or upon the future effective date or time of a certificate of conversion to non-Delaware entity. A *certificate of cancellation shall be filed in the office of the Secretary of State to accomplish the cancellation of a certificate of formation upon the dissolution and the*

---

[52] *Id.* § 18-805 (emphasis added).

20

*completion of winding up* of a limited liability company. . . .[53]

Section 18-104(d) in turn states that after the limited liability company receives the notice of resignation of its registered agent, the company shall obtain a new registered agent.[54] If the company "fails to obtain and designate a new registered agent as aforesaid prior to the expiration of the period of 30 days after the filing by the registered agent of the certificate of resignation, the certificate of formation of such limited liability company shall be canceled."[55]

Trusa would have me read any cancellation method under Section 18-203(a) as triggering the rights granted to creditors in Section 18-805, but the statute's plain language does not allow for this interpretation. Instead, the filing of a certificate of cancellation and the automatic cancellation of a certificate of formation are treated differently in this context. The statute lists seven ways in which a certificate of formation may be canceled.[56] But, a certificate of cancellation may only be filed

---

[53]  *Id.* § 18-203(a) (emphasis added).

[54]  *Id.* § 18-104(d).

[55]  *Id.*

[56]  *Id.* § 18-203(a) (A certificate of formation may be canceled (1) upon dissolution or winding up; (2) as provided in 6 *Del. C.* § 18-104(d) when a company fails to "obtain and designate a new registered agent, to take the place of the registered agent so resigning" before 30 days after the filing of the certificate of resignation; (3) as provided in 6 *Del. C.* § 18-104(i)(4) upon entry of a court order enjoining any person or entity from acting as registered agent and the company fails to obtain and designate a new registered agent within 30 days; (4) as provided in 6 *Del. C.* § 18-

"upon the dissolution and winding up of the company," not for any of the other reasons listed in Section 18-203(a).[57] And, a certificate of cancellation is a statutory prerequisite to the applicability of Section 18-805.[58] Thus, a creditor may only seek the appointment of a trustee or receiver when *a certificate of cancellation is filed after the dissolution and winding up of the company*, not where the certificate of formation has been canceled by operation of law for want of a registered agent.[59]

---

1108 if the company fails to pay the annual tax due under 6 *Del. C.* § 18-1107 for three years after the tax becomes due; (5) upon the filing of a certificate of merger or consolidation or certificate of ownership and merger if company is not the surviving entity or upon the future effective date of such certificate; (6) upon the filing of a certificate of transfer or upon the effective date of such certificate; (7) upon the filing of a certificate of conversion to a non-Delaware entity or upon the effective date of such certificate).

[57]     *Id.*

[58]     *Id.* § 18-805.

[59]     *Id.*; ROBERT L. SYMONDS, JR. & MATTHEW J. O'TOOLE, SYMONDS & O'TOOLE ON DELAWARE LIMITED LIABILITY COMPANIES § 15.07, at 15-15 to -16, (2d ed. 2015) ("The circumstances under which a creditor may pursue and also may find it worthwhile to seek the appointment of a trustee or receiver for a terminated company under Section 18-805 are likely to be fairly narrow. The actual prior filing of a certificate of cancellation for the debtor limited liability company is a statutory prerequisite.") (internal citations omitted); *id.* § 16.09[A], at 16-69 to -70 ("Section 18-805 on its face permits the appointment of a trustee or receiver only when the limited liability company's certificate of formation has been cancelled by the filing of a certificate of cancellation. . . . Section 18-805, however, clearly does not sanction the appointment of a trustee or receiver in a situation where the certificate of formation has not been cancelled or where the certificate has been cancelled by other means, for example, as a result of the filing of a certificate of merger, a certificate of transfer, or a certificate of conversion to a non-Delaware entity, or by operation of law for want of a registered agent or for non-payment of annual tax.") (internal citations omitted).

Trusa has not alleged that the Company is dissolved or has begun the winding up process, much less that the Company has filed a certificate of cancellation; therefore, Section 18-805 does not confer upon Trusa, as a creditor, a statutory right to seek the appointment of a receiver.

### 2. Trusa is not entitled to equitable dissolution

Trusa also argues that this Court may use its equitable jurisdiction to dissolve the Company upon the request of a creditor. This Court has noted that:

> Section 18-802 does not state that it establishes an exclusive means to obtain dissolution, nor does it contain language overriding this court's equitable authority. To the contrary, the LLC Act elsewhere recognizes that equity backstops the LLC structure by providing generally that "the rules of law and equity" shall govern in "any case not provided for in this chapter."[60]

Thus, "this Court, as a court of equity, has the power to order the dissolution of a solvent company and appoint a receiver to administer the winding up of those assets."[61] Given its extreme nature, however, equitable dissolution is a remedy that should be granted sparingly.

---

[60] *In re Carlisle Etcetera, LLC*, 114 A.3d 592, 601-02 (Del. Ch. 2015) (quoting *6 Del. C.* 18-1104).

[61] *Id.* at 601 (quoting *Weir v. JMACK, Inc.*, 2008 WL 4379592, at *2 (Del. Ch. Sept. 23, 2008)).

Trusa argues that XION should be dissolved because the Managing Members drove the Company into insolvency and then completely abandoned the Company.[62] Nepo responds that neither of those are sufficient reasons to grant equitable dissolution to a creditor.[63] I need not address that dispute, however, because Trusa's arguments on this point are wholly conclusory and contrary to the specific allegations of the Complaint. The Complaint concedes that Mir and Nepo (through his son, David) are trying to resolve creditor claims.[64] For example, Mir engaged counsel to attempt "to reach an amicable settlement with debtors and third party service providers" and to pursue "remuneration from debtors and third party service providers."[65] When it became clear that XION did not have the resources to cover the law firm's required "sizable retainer,"[66] Mir informed Trusa in January 2015 that XION management was "working on alternatives" and would update him again "once this effort is complete."[67] Likewise, Nepo, through his son David, contacted

---

[62]     Pl.'s Answering Br. 14-15.

[63]     Def.'s Opening Br. 17-18.

[64]     Am. Compl. ¶¶ 33-36, 46-50 (showing communications between Mir, Nepo's son, and Trusa).

[65]     *Id.* ¶¶ 33-34.

[66]     *Id.* ¶ 35.

[67]     *Id.*

Trusa on numerous occasions throughout 2016 and communicated to Trusa that he had "accumulated sufficient evidence to implicate Collins, a broker dealer, and a law firm in the wrongful scheme."[68] Thus, rather than showing abandonment, Trusa's complaint shows active engagement on the part of Nepo and Mir. Trusa disagrees with their actions. This is not a basis for dissolution.

Similarly, Trusa states that the Company is insolvent but provides no non-conclusory allegations to support that statement. Specifically, Trusa alleges "XION has no money to operate its business," and "XION has taken no action to protect or monetize its investments."[69] Other than invoking the word "insolvent" to refer to XION in the allegations of the Complaint, Trusa does not plead any additional factual support.[70] These bare assertions are insufficient to allege insolvency, abandonment, or managerial dysfunction; therefore, no basis for dissolution exists.[71]

---

[68]     *Id.* ¶¶ 46-47.

[69]     *Id.* ¶ 36.

[70]     *Id.* ¶¶ 36, 43.

[71]     The declaratory judgment count is either completely duplicative of or asserts the necessary determinations the Court would make in resolving Counts II, III, and IV. *ESG Capital P'rs II, LP v. Passport Special Opportunities Master Fund, LP*, 2015 WL 9060982, at *15 (Del. Ch. Dec. 16, 2015); *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *28-29 (Del. Ch. Nov. 26, 2014). Further, because I am dismissing the underlying claims for failure to state a claim or lack of standing, there is no need to resolve the declaratory judgment count. Therefore, this claim is dismissed.

## C. Trusa Has Not Adequately Alleged a Claim for Fraud

In order to state a claim for fraud, a plaintiff must allege that (1) the defendant made a false representation or omission of fact that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted or did not act in justifiable reliance on the representation; and (5) the plaintiff suffered damages as a result of the reliance.[72]

Under Court of Chancery Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," while "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally."[73] "To support a claim for fraud, the putative misrepresentation must concern either a past or contemporaneous fact or a future event that falsely implies an existing fact."[74] "[T]he plaintiff must allege circumstances sufficient to

---

[72] *Addy v. Piedmonte*, 2009 WL 707641, at *18 (Del. Ch. Mar. 18, 2009); *Abry P'rs V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

[73] Ct. Ch. R. 9(b); *Addy*, 2009 WL 707641, at *19; *Abry P'rs*, 891 A.2d at 1050.

[74] *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *7 (Del. Ch. Dec. 23, 2008) (citing *Berdel, Inc. v. Berman Real Estate Mgmt., Inc.*, 1997 WL 793088, at *8 (Del. Ch. Dec. 15, 1997)).

fairly apprise the defendant of the basis for the claim."[75]  "To satisfy Rule 9(b), a complaint must allege: (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations."[76]

Trusa alleges that the Managing Members knowingly made false representations with the intent to induce him to make the Loan to XION.  Trusa states that he justifiably relied on these misrepresentations in giving the Loan, and he would not have made the Loan had he known the truth.[77]  Specifically, Trusa alleges that the Managing Members falsely represented the following facts: (1) one hundred percent of the Loan would be invested in publicly traded companies; (2) Nepo was making a significant financial investment in XION; (3) Trusa's Loan would be secured by identifiable collateral; and (4) Trusa would receive monthly reports identifying the secured collateral.  Trusa alleges that these misrepresentations were made throughout 2010 in "a series of sales pitches, presentations, and . . . documentation before Trusa made the Loan."[78]

---

[75]   *Addy*, 2009 WL 707641, at *19 (citing *H-M Wexford LLC v. Encorp Inc.*, 832 A.2d 129, 145 (Del. Ch. 2003)); *Abry P'rs*, 891 A.2d at 1050.

[76]   *Abry P'rs*, 891 A.2d at 1050 (citing *H-M Wexford LLC*, 832 A.2d at 145); *see Addy v. Piedmonte*, 2009 WL 707641, at *19.

[77]   Am. Compl. ¶¶ 76-82.

[78]   Pl.'s Answering Br. 20.

All of the alleged misrepresentations lack the particularity required by Rule 9(b) to state a claim for fraud.[79] First, the Complaint does not allege with particularity when the alleged misrepresentations were made—no specific dates or times frames are given. Trusa alleges that the purported misrepresentations occurred "before the Loan Agreement was signed in October 2010."[80] But, this "fails to allege in any meaningful sense when" the alleged misrepresentations were made.[81] It is "the functional equivalent to providing no time parameter at all because the misrepresentations logically could not have occurred during any other period of time" if Trusa relied on them to sign the Agreement.[82] Second, the Complaint mentions that the alleged misrepresentations occurred in sales pitches, presentations, and other documentation, but does not give any detail about "where or by what means"[83] the representations were made, nor does it supply any such documentation.[84] Third, the Complaint alleges that Collins, Nepo, and Mir

---

[79]  *See supra* note 76 and accompanying text.

[80]  Pl.'s Answering Br. 20.

[81]  *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *7 (Del. Ch. Jan. 30, 2015).

[82]  *Id.*

[83]  *Id.* at *8.

[84]  Am. Compl. ¶ 7; Pl.'s Answering Br. 20.

collectively made these alleged statements but does not identify "who made any particular misrepresentation."[85] A plaintiff cannot lump together defendants but must "identify specific acts of individual defendants" and "who made any particular misrepresentation."[86] The collective dearth of sufficiently detailed allegations about the who, what, where, or when requires dismissal under Rule 9(b).[87]

Possibly recognizing the weakness of the pre-Agreement claims, Trusa alleges that the misrepresentations are memorialized in the Agreement and reiterated

---

[85] *Fortis Advisors LLC*, 2015 WL 401371, at *8.

[86] *Id.* at *8 & n.48 (quoting *Steinman v. Levine*, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002)). Trusa cites to *Anvil Holding Corp. v. Iron Acquisition Co.* for the proposition that every defendant is liable for his or her fraudulent conduct and for causing the false representations in the Loan Agreement. Pl.'s Answering Br. 21. In *Anvil*, however, the executives, on two distinct meeting dates, specifically were asked about and affirmatively concealed pertinent information of which they allegedly had actual knowledge. 2013 WL 2249655, at *3 (Del. Ch. May 17, 2013). Thus, "plaintiffs did identify who committed the misrepresentations (and when) by alleging all of the individual defendants participated in the omission of material information. It does not follow from this scenario that where the alleged misrepresentations consist of false promises rather than omissions, that one is excused from identifying who made the false promises." *Fortis Advisors LLC*, 2015 WL 401371, at *8.

[87] *Fortis Advisors LLC*, 2015 WL 401371, at *8 ("[W]hen the lack of any such details [regarding where or by what means any of the misrepresentations were made] is considered together with the failure of the complaint to identify when any of the alleged misrepresentations were made and who made any of them, the complaint fails in my view to apprise Dialog of sufficient information concerning the circumstances of the alleged fraud and thus does not satisfy the particularity requirement of Rule 9(b).").

29

in the Borrower's Certificate.[88]  Specifically, Trusa argues these misrepresentations appear in Sections 2.3, 4.5, and 4.12 of the Agreement.[89]  Sections 2.3, 4.5, and 4.12 generally provide that: (1) IIG, in its sole discretion, will use the proceeds of the loan to purchase convertible debt; (2) all information given to the Lender by IIG concerning IIG's financial condition or for the purpose of obtaining credit is accurate, correct, and complete; and (3) any representations made by IIG in the Agreement or in any certificate or other document furnished by IIG are true, not misleading, and do not omit or misstate a material fact necessary to make such representation or warranty.[90]  It is unclear how the representations in the Agreement relate to the alleged misrepresentations.  Regardless, each fails to state a claim of fraud for the following additional reasons.

According to Trusa, the Managing Members purportedly misrepresented that one hundred percent of the Loan would be invested in publicly traded companies, but the relevant representation identified by Trusa is that IIG/XION "shall use the proceeds of the Loan . . . as determined by Borrower in its sole discretion."[91]  There

---

[88]     Pl.'s Answering Br. 4-5; Loan and Security Agreement §§ 2.3, 4.5, 4.12.

[89]     *Id.*

[90]     Loan and Security Agreement §§ 2.3, 4.5, 4.12.

[91]     *Id.* § 2.3.

30

is no mention of publicly traded companies or "one hundred percent" of the Loan, and the decision is left solely to the discretion of IIG/XION.

Trusa also alleges that the Managing Members purportedly misrepresented that Nepo would be an anchor investor. But Trusa does not assert anywhere in the Complaint that Nepo did not invest in the Company. Therefore, there is no allegation that this was a fraudulent statement.

The remaining purported misrepresentations relate to the identifiable collateral that will be acquired to secure the Loan and the monthly reports that Trusa will receive if he invests.[92] Even assuming these misrepresentations sufficiently relate to sections of the Agreement to which Trusa cites, Trusa never explains why these amount to anything more than unfulfilled contractual promises.[93] At most, Trusa has asserted a possible breach of contract claim, not a fraud claim.[94]

---

[92]    Am. Compl. ¶ 77.

[93]    Loan and Security Agreement §§ 4.5, 4.12.

[94]    *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *10 (Del. Ch. Dec. 23, 2008) ("[T]he ability to plead intent generally raises the spectre of parties using a claim for promissory fraud to pursue what in reality is a breach of contract cause of action, but for one reason or another cannot be pleaded that way. . . . [A] plaintiff must plead something more than a promise, mere nonperformance, justifiable reliance, damages, and a general averment of a culpable state of mind. To assert a claim for promissory fraud, the plaintiff also must plead specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made.") (citing *Berdel, Inc. v. Berman Real Estate Mgmt., Inc.*, 1997 WL 793088, at *8-9 (Del. Ch. Dec. 15, 1997) (citations omitted) (holding that "a party's failure to keep a promise does not prove the promise was

**D.    Trusa Has Not Adequately Alleged a Material Omission**

Trusa alleges that the Managing Members of XION induced him into agreeing to the Loan by omitting material information relating to Collins's conflicts of interest.[95]  In an arm's length negotiation, where no special relationship between the parties exists, "a party has no affirmative duty to speak"[96] and  "is under no duty to disclose '"facts of which he knows the other is ignorant' even if he 'further knows the other, if he knew of them, would regard them as material in determining his course of action in the transaction in question.'"[97]  Thus, "any claim of fraud in an arms' length setting necessarily depends on some form of representation," and "[a] fraud claim in that setting cannot start from an omission."[98]  But, if a party "chooses to speak then it cannot lie," and "once the party speaks, it also cannot do so partially or obliquely such that what the party conveys becomes misleading."[99]

---

false when made" and that the plaintiff did not adduce evidence showing that the defendant intended to renege at the time it made the promise)).

[95]    Am. Compl. ¶ 80.

[96]    *Prairie Capital III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 52 (Del. Ch. 2015) (citing *Airborne Health, Inc. v. Squid Soap, LP*, 2010 WL 2836391, at *9 (Del. Ch. July 20, 2010)).

[97]    *Id.* (quoting *Prop. Assoc. 14 v. CHR Hldg. Corp.*, 2008 WL 963048, at *6 (Del. Ch. Apr. 10, 2008)).

[98]    *Id.*

[99]    *Id.* (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

32

Trusa concedes that the negotiations were arm's length and does not argue that the parties had a fiduciary relationship or other similar relationship of trust and confidence. It is unclear whether Trusa alleges that the purported omission occurred prior to the signing of the Agreement, in the Agreement itself, or both.[100] Nevertheless, Trusa fails to allege how any representation is false or misleading or how any representation creates an affirmative duty to disclose personal investment information about a member.[101] Thus, Trusa fails to state a claim for fraudulent omission.

## E.    Trusa Has Not Adequately Alleged a Claim for Fraudulent Transfer

Trusa alleges a fraudulent transfer occurred when XION's managers transferred the Loan money "other than as represented" in the prior discussions with Trusa.[102] In the chapter concerning fraudulent transfers, the Delaware Code defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and

---

[100]    Pl.'s Answering Br. 4; Loan and Security Agreement §§ 2.3, 4.5, 4.12.

[101]    *See supra* Section II.C.

[102]    Pl.'s Answering Br. 24.

includes payment of money, release, lease and creation of a lien or other encumbrance . . . ."[103] A transfer is fraudulent if a debtor makes the transfer:

> (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> a. Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[104]

A claim for fraudulent transfer also must comport with Rule 9(b) and be pled with particularity.[105]

In the Complaint, Trusa states:

> Any transfers to affiliates or insiders made when XION was insolvent or which caused XION to become insolvent are fraudulent transfers.
>
> Upon information and belief, transfers were made to XION's insiders and affiliates including but not limited to

---

[103]    6 *Del. C.* § 1301.

[104]    *Id.* § 1304(a).

[105]    *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 394011, at *10 (Del. Ch. Jan. 29, 2015) (citing *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *12 (Del. Ch. Dec. 23, 2008); *Dodge v. Wilm. Trust Co.*, 1995 WL 106380, at *6 (Del. Ch. Feb. 3, 1995)).

> Collins, Greystone Capital, Nepo, David Nepo, and companies affiliated with Nepo and David Nepo.
>
> To the extent that Collins, Mir, and Nepo cause XION to transfer assets to themselves and their affiliated companies, any such transfers were made with actual intent to hinder, delay, or defraud Trusa and other creditors.
>
> . . . To the extent that Collins, Mir, and Nepo caused XION to transfer assets to themselves and their affiliated companies without receiving a reasonably equivalent value in exchange for the transfer, any such transfers left XION with insufficient remaining assets and incurred debts beyond XION's ability to pay Trusa and other creditors.[106]

Count VI states, in part, "There is only evidence of $682,500 of the $1,100,000 loaned to XION invested in U.S. publicly traded companies based on SEC filings."[107] In an effort to bolster his claims, Trusa's brief argues this means "$417,500 was not invested in publicly traded companies."[108] Trusa goes on to assert that Nepo and other XION insiders and affiliates received this money "before debts to creditors like Trusa were satisfied," and this caused XION's insolvency and cancellation.[109] But, Trusa fails to provide even the most basic details regarding the

---

[106] Am. Compl. ¶¶ 90-94.

[107] *Id.* ¶ 86.

[108] Pl.'s Answering Br. 24; Am. Compl. ¶¶ 90-94.

[109] Pl.'s Answering Br. 24; Am. Compl. ¶¶ 90-94.

"transfer." Trusa does not state who received what assets or where or when any such transfer of assets occurred.[110] Merely parroting the elements of the statute does not meet the minimum pleading requirements for a claim under Section 1304(a)(2).[111] Therefore, this claim is dismissed.

### F. Trusa Has Not Alleged a Claim for Conspiracy to Commit Fraud or Aiding and Abetting Fraud

"The elements of civil conspiracy under Delaware law are: (i) a confederation or combination of two or more persons; (ii) an unlawful act done in furtherance of the conspiracy; and (iii) damages resulting from the action of the conspiracy parties."[112] The elements of aiding and abetting are "(i) underlying tortious conduct, (ii) knowledge, and (iii) substantial assistance."[113] As Trusa has failed to allege an

---

[110] *See Hospitalists of Delaware, LLC v. Lutz*, 2012 WL 3679219, at *15 (Del. Ch. Aug. 28, 2012) ("[T]he Complaint does not reference an imminent business or transaction in which Integra was about to engage other than in conclusory fashion . . . nor does the Complaint contain any information about the state of Integra's solvency before or after the redemption by BC2.").

[111] *See Spring Real Estate, LLC v. Echo/RT Hldgs., LLC*, 2013 WL 6916277, at *7 (Del. Ch. Dec. 31, 2013) ("The Complaint does not state a claim for constructive fraudulent transfer because these allegations are conclusory and mere recitations of the fraudulent transfer statute."); *Hospitalists of Delaware*, 2012 WL 3679219, at *13 ("[E]ven under Delaware's minimal notice pleading standard, simply reciting the statutory or common law elements of an offense, as Plaintiff has here, is insufficient to state a claim upon which relief may be granted.").

[112] *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *22 (Del. Ch. Nov. 26, 2014) (quoting *Albert v. Alex Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *10 (Del. Ch. Aug. 26, 2005)).

[113] *Id.* at *23.

underlying "tortious" or "unlawful" act, I need not consider the other elements of either cause of action, and both of these claims are dismissed.

## III.  CONCLUSION

For the foregoing reasons, Count I for a declaratory judgment is dismissed as duplicative and for failure to state a claim.  Counts II and III for breach of fiduciary duty and Count IV for dissolution are dismissed for lack of standing and failure to state a claim.  Counts V, VI, VII, and VIII for fraud, fraudulent transfer, civil conspiracy to commit fraud, and aiding and abetting fraud, respectively, are dismissed for failure to state a claim.

**IT IS SO ORDERED**.