## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| STEVEN LINEHAN and THOMAS MILLS, <br><br> Plaintiffs, <br><br> v. <br><br> STANLEY A. MILLS, JR., PATRICK GOSSETT, EDWARD CHRZANOWSKI, FRANCIS MARKERT, TIM BENNETT, TONI SHARP, DONALD PRESTON, THE CITY OF REHOBOTH BEACH BOARD OF COMMISSIONERS, TAYLOUR TEDDER, and THE CITY OF REHOBOTH BEACH, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 2024-0851-BWD |

## MEMORANDUM OPINION
## RESOLVING DEFENDANTS' MOTION TO DISMISS

Date Submitted: March 28, 2025
Date Issued: May 28, 2025

Theodore A. Kittila, William E. Green, Jr., HALLORAN FARKAS + KITTILA LLP, Wilmington, DE; *Attorneys for Plaintiffs Steven Linehan and Thomas Mills*.

James H. McMackin, III, Albert J. Carroll, Michelle G. Bounds, MORRIS JAMES LLP, Wilmington, DE; *Attorneys for Defendants Stanley A. Mills, Jr., Patrick Gossett, Edward Chrzanowski, Francis Markert, Tim Bennett, Toni Sharp, Donald Preston, the City of Rehoboth Beach Board of Commissioners, and the City of Rehoboth Beach*.

Laurence V. Cronin, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE; *Attorneys for Defendant Taylour Tedder*.


**DAVID, V.C.**

The Charter of Rehoboth Beach (the "Charter") vests the Commissioners of Rehoboth Beach (the "Commissioners") with the authority to appoint a City Manager for the City of Rehoboth Beach, Delaware (the "City"). In the spring of 2024, the City hired a new City Manager and approved an employment agreement that entitles him to an annual salary of $250,000 and a $750,000 forgivable housing loan, among other benefits. The plaintiffs in this action, homeowners in the City, ask the Court to rescind that agreement and enjoin the City from using municipal funds to pay the City Manager.

The plaintiffs do *not* challenge the City Manager's compensation package as excessive. The Charter is clear that the Commissioners have the authority to fix the City Manager's compensation; that is not for the Court to decide. Instead, the plaintiffs bring two other claims to support the relief they seek. First, the plaintiffs allege that the City Manager lacks certain qualifications mandated under the Charter. Because the language of the Charter is ambiguous, further proceedings are necessary to determine whether the City complied with the Charter when hiring the City Manager. Second, the plaintiffs allege that the Commissioners violated Delaware's Freedom of Information Act ("FOIA") when they negotiated and offered the City Manager his "exorbitant employment agreement." The plaintiffs' FOIA claims are time-barred or fail to state a claim.

1

# I.   BACKGROUND

The following facts are taken from Plaintiffs' Verified Complaint for Declaratory and Injunctive Relief and Rescission (the "Complaint") and the documents it incorporates by reference.[1]   *See* Pls.' Verified Compl. for Decl. & Injunctive Relief & Rescission [hereinafter Compl.], Dkt. 1.   At this procedural stage, the Court is required to assume that the allegations in the Complaint are true.

The plaintiffs in this action, Steven Linehan and Thomas Gaynor ("Plaintiffs"), are homeowners in the City.   *Id.* ¶ 10.

The City's Charter vests the Commissioners with the authority to "appoint a City Manager who shall be Chief Administrative Officer of the City" and to fix "[t]he compensation which the [City] Manager shall receive for the performance of his duties[.]"   *See* Charter of Rehoboth Beach [hereinafter Charter] § 17(a), (d).[2] The Charter states that "[t]he City Manager shall hold office for an indefinite term and may be removed by a majority vote of the Commissioners."   *Id.* § 17(c).   The Charter also states that:

---

[1] *See Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *12 (Del. Ch. June 29, 2005))), *aff'd*, 58 A.3d 414 (Del. 2013).

[2]   A   copy   of   the   Charter   can   be   accessed   at: https://charters.delaware.gov/rehobothbeach.pdf.

No person shall be appointed to the office of City Manager of the Commissioners of Rehoboth Beach unless he shall have received a degree in engineering from an approved college or university, or shall have served as City Manager of some other incorporated municipality for a period not less than four (4) years or shall have had practical engineering experience for a period of not less than four (4) years; provided, however, that nothing contained herein shall prohibit the Commissioners of Rehoboth Beach from imposing such other qualifications as may be deemed necessary . . . .

*Id.* § 17(b).

In late 2023, the City began a search for a new City Manager. Compl. ¶ 23. The City first issued a job posting that identified as "[m]inimum requirements" for the position "a bachelor's degree in public administration or related field and seven (7) years of local government experience with at least five (5) years in progressively responsible management positions, including human resources and budget/finance management." *Id.* The posting included an annual salary range of $140,000 to $175,000. *Id.* ¶ 24. When the City's initial job posting failed to yield viable candidates for the City Manager position, the Commissioners "increased the offered compensation range to $250,000, and added (among other benefits) an additional $750,000 in the form of a no-interest housing loan that would be forgiven over seven years." *Id.* ¶ 25.

Taylour Tedder applied for the position. Although Tedder holds a B.A. in Economics and a Master's in Public Administration (with specialties in city and county management, public finance, and economic development), he does not have

3

a four-year engineering degree.  *Id.* ¶ 32; *id.*, Ex. D.  And while Tedder previously worked as city manager of Boulder City, Nevada for two years and ten months and as assistant city manager of Leavenworth, Kansas before that, he did not have four years of experience working as a city manager in any city.  Compl. ¶ 33; *id.*, Ex. D.

Between November 2023 and March 2024, the Commissioners held seven meetings in nonpublic executive sessions to "discuss[] the qualification[s]" and conduct "individual interviews of the candidates" for City Manager.  Compl. ¶ 27 (quoting *id.*, Ex. B at 3).  Then, on April 8, the Commissioners held a public meeting to consider the appointment of a City Manager.  At the meeting, the Commissioners unanimously resolved to appoint Tedder as City Manager and to authorize the City's Mayor, Stanley A. Mills, Jr., "to execute and deliver an employment agreement as a condition of [Tedder's] employment."  *Id.* ¶ 29 (quoting *id.*, Ex. B at 3).

The next day, the City and Tedder executed an employment agreement (the "Employment Agreement") under which Tedder would serve as City Manager.  *Id.*, Ex. C § 1.1.  The Employment Agreement includes a May 15 start date and provides for an annual salary of $250,000 and a $750,000 forgivable housing loan, among other benefits.  Compl. ¶ 30; *id.*, Ex. C §§ 2.2, 3.1(a), 8.[3]

---

[3] The Employment Agreement also states that, "during the period of time 90 days prior to an annual municipal election and 90 days after an annual municipal election, a super majority vote (at least six Commissioners) of the Commissioners is required to terminate the services of the City Manager."  Compl., Ex. C § 13.

4

Several weeks later, on May 31, Plaintiffs filed a petition with the Office of the Attorney General of the State of Delaware (the "AG's Office") to determine whether the Commissioners had violated FOIA by holding nonpublic meetings to discuss the appointment of a City Manager.[4]  On June 26, the AG's Office issued an opinion (the "AG Opinion") determining that the Commissioners violated FOIA by "engaging in discussions of the City Manager's employment contract, and especially the compensation package, in executive session" and by "giving improper notice for . . . planned discussions of the qualifications of City Manager candidates at its November 6, 2023 and January 8, 2024 executive sessions."  Compl., Ex. B at 4–5.[5]

---

[4] *See* 29 *Del. C.* § 10005(e) ("Any citizen may petition the Attorney General to determine whether a violation of this chapter has occurred or is about to occur.").

[5] *See also* Compl., Ex. B at 4 ("This Office has found that '[o]n its face, FOIA does not permit public bodies to engage in private strategy sessions regarding employment-related contracts outside of a collective bargaining or litigation context.'  Discussions of salary and other compensation involve the expenditure of public funds and are not related to the individual's qualifications to hold a job.  Public employees' compensation is a matter of public record, as it is 'well settled that citizens have a right to know how their public servants are compensated with taxpayer monies, in whatever the form that compensation might take.'  Accordingly, we find that the City violated FOIA by engaging in discussions of the City Manager's employment contract, and especially the compensation package, in executive session." (footnotes omitted) (citations omitted)); *id.* at 5 ("Although the seven meetings with an executive discussion about the City Manager candidates and the April 8, 2024 Special Meeting were public meetings, time for public comment was not scheduled on the meeting agendas.  Agendas are required to include a general statement of all major items expected to be discussed at a public meeting.  A citizen should be able to review an agenda and determine whether an issue important to them will be under consideration and decide whether to attend.  A public comment period is a major issue for discussion, and citizens must receive public notice of their opportunity for public comment so they can

The AG Opinion recommended "that the [Commissioners] discuss the City Manager's contract, including the compensation package, and ratify the vote associated with the City Manager's contract at a future meeting held in compliance with FOIA's open meeting requirements[,]" which "must include time for public comment." Compl. ¶ 42 (quoting *id.*, Ex. B at 6).

On July 8, as the AG Opinion recommended, the Commissioners held a special meeting to consider the Employment Agreement, including Tedder's compensation package, and "for the purpose of ratifying the Employment Agreement." *Id.* ¶¶ 42–43. At the meeting, "the Mayor specifically instructed the public in attendance that comments regarding the Charter's requirements or the qualifications of Tedder to serve as City Manager would be deemed out of order." *Id.* ¶ 44. The Commissioners heard public comment from eighteen residents, who "spoke out against the compensation package, the hiring of Tedder, the lack of transparency, and the violations of the Charter." *Id.* ¶ 45. Thereafter, the Commissioners voted unanimously to ratify the Employment Agreement. *Id.* ¶ 46.

On August 15, 2024, Plaintiffs initiated this action through the filing of the Complaint. The Complaint seeks a declaratory judgment that the Employment

---

decide whether they wish to attend the meeting. As such, we also find that the City further violated FOIA by failing to notice time for public comment on its agendas for each of these meetings." (footnotes omitted) (citations omitted)).

Agreement violates the Charter, that Tedder's salary therefore constitutes an illegal use of municipal funds, and that the City hired Tedder in violation of FOIA. *See id.* ¶¶ 49–73. The Complaint also seeks rescission of the Employment Agreement and an order enjoining the payment of municipal funds under the Employment Agreement.[6] *See id.* ¶¶ 74–89.

---

[6] On September 12, 2024, the Mayor, the Commissioners, and the City moved to dismiss the Complaint (the "Motion to Dismiss"). Defs.' Mot. to Dismiss, Dkt. 17. The same day, Tedder filed a joinder to the Motion to Dismiss. Def. Taylour Tedder's Joinder to Defs.' Mot. to Dismiss, Dkt. 8. On October 18, the Mayor, the Commissioners, and the City filed their Opening Brief in Support of the Motion to Dismiss (the "Opening Brief"). Defs. Stanley A. Mills, Jr., individually & as Mayor of City of Rehoboth Beach; Patrick Gossett, Edward Chrzanowski, Francis Markert, Tim Bennett, Toni Sharp, & Donald Preston, individually & as Comm'rs of City of Rehoboth Beach Bd. of Comm'rs; City of Rehoboth Beach Bd. of Comm'rs; & City of Rehoboth Beach's Opening Br. in Support of Defs.' Mot. to Dismiss Pls.' Verified Compl. [hereinafter OB], Dkt. 11. Tedder filed a joinder in support of the Opening Brief on October 21. Def. Taylour Tedder's Joinder in Support of Defs.['] Opening Br. in Support of Mot. to Dismiss, Dkt. 12. On November 18, Plaintiffs filed an answering brief in opposition to the Motion to Dismiss. Pls.' Answering Br. in Opp'n to Mot. to Dismiss [hereinafter AB], Dkt. 13. On December 3, the Mayor, the Commissioners, and the City filed their reply brief in further support of the Motion to Dismiss (the "Reply"). Defs. Stanley A. Mills, Jr., individually & as Mayor of City of Rehoboth Beach; Patrick Gossett, Edward Chrzanowski, Francis Markert, Tim Bennett, Toni Sharp, & Donald Preston, individually & as Comm'rs of City of Rehoboth Beach Bd. of Comm'rs; City of Rehoboth Beach Bd. of Comm'rs; & City of Rehoboth Beach's Reply Br. in Further Support of Defs.' Mot. to Dismiss Pls.' Verified Compl. [hereinafter RB], Dkt. 14. The next day, Tedder filed a joinder in support of the Reply. Def. Taylour Tedder's Joinder in Support of Defs.' Reply Br. in Support of Mot. to Dismiss, Dkt. 15. The Court heard oral argument on March 28, 2025. *See* JAF, Dkt. 19.

## II.   ANALYSIS

Defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6).[7] When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

The Complaint includes five counts. Counts I and II seek a declaration that the Commissioners violated the Charter by hiring a City Manager who does not meet the qualifications mandated under the Charter, and that paying Tedder's salary and other benefits therefore constitutes an illegal use of municipal taxpayer funds. Count III seeks an order invalidating the Employment Agreement under FOIA. Counts IV and V seek related relief.

As explained below, the Complaint states a claim for violation of the Charter but does not state a claim under FOIA. At this early stage, the Court will not decide

---

[7] Defendants also moved to dismiss under Court of Chancery Rule 12(b)(1), but did not brief that motion. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

8

what relief might be appropriate in the event Plaintiffs' challenge under the Charter ultimately is successful.

## A. The Complaint States A Claim For Violation Of The Charter.

Counts I and II of the Complaint assert that the Commissioners violated the Charter by hiring a City Manager who does not meet the qualifications mandated under the Charter. Defendants first contend that, rather than deciding whether a Charter violation has occurred, the Court should leave these issues to play out through the political process. OB at 17. Defendants also argue that Plaintiffs unreasonably delayed in bringing their challenge under the Charter, and that the Charter permits the Commissioners to impose different qualifications for the City Manager as necessary. *See id.* at 27, 30. Those arguments are addressed below.

### 1. Compliance With The Charter Is An Appropriate Issue For Judicial Resolution.

The Motion to Dismiss raises one threshold argument that warrants discussion at the outset: whether this Court should interfere with the Commissioners' choice of City Manager. As Defendants see it, this lawsuit threatens the City's ability "to hire a competent, experienced, and educated individual as City Manager," and "[t]he proper avenue for relief in this circumstance is through the political process, not the judicial process." *Id.* at 16–17. In other words, if the City's residents disagree with the Commissioners' hiring decisions, they can vote their public officials out of office, but they should not be permitted to challenge hiring decisions in court.

9

It is true that "this Court is cautious not to impermissibly encroach upon the independent authority of each separate branch of . . . government." *Korn v. New Castle Cty.*, 2005 WL 396341, at *1 (Del. Ch. Feb. 10, 2005). Elected officials must manage the City's affairs for the benefit of its residents; "courts have no right to substitute their judgment of what is best for the judgment of the officers upon whom the law casts the responsibility of deciding." *Taylor v. Smith*, 115 A. 405, 409 (Del. Ch. 1921). "Embodied in this approach is the notion that most disputes concerning the [City]'s policies are political in nature and must be resolved at the polls, not in the courts." *Korn*, 2005 WL 396341, at *1. In this case, though, Plaintiffs allege that the City "exceeded its own authority established by law" under the Charter, making it "appropriate for the Court to resolve this controversy[.]" *Id.* Because the City and its Commissioners are bound by law to comply with the Charter, the Court must decide Plaintiffs' challenge.[8]

---

[8] *See* Charter § 1(d) ("All powers of The Commissioners of Rehoboth Beach, whether expressed or implied, shall be exercised as prescribed by this Charter . . . ."). *Cf. Korn*, 2005 WL 396341, at *1 ("[T]he concept of fidelity to the law 'presupposes a commitment by the governing authority to abide by its own rules.'" (quoting Lon L. Fuller, THE MORALITY OF LAW 234 (Yale Univ. Press, 1964))) (cleaned up); *Schadt v. Latchford*, 843 A.2d 689, 691–92 (Del. 2004) ("[A city's] Charter 'stands as its constitution,' and . . . ordinances enacted by the City Council: '. . . must conform to, be subordinate to, not conflict with, and not exceed the charter, and can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state.'" (footnote omitted) (first quoting *Bivens v. City of Grand Rapids,* 505 N.W.2d 239, 243 (Mich. 1993); and then quoting 5 McQuillin, *Municipal Corporations* § 15.19 (3d ed.))).

## 2. The Court Cannot Find As A Matter Of Law That Plaintiffs Unreasonably Delayed In Bringing Their Challenge Under The Charter.

Defendants next argue that Plaintiffs' challenge under the Charter is barred by the equitable doctrine of laches. "The doctrine of laches protects defendants from prejudice by prohibiting the unreasonably slow filing of equitable claims." *Quill v. Malizia*, 2005 WL 578975, at *14 (Del. Ch. Mar. 4, 2005) (first citing *Wright v. Scotton*, 121 A. 69, 72 (Del. 1923); and then citing 27A AM. JUR. 2d *Equity* § 141). "To sustain a laches defense, a defendant must show that it was prejudiced because the plaintiff unreasonably delayed bringing suit after being on at least inquiry notice of its claims." *Id.* (first citing *Fed. United Corp. v. Havender*, 11 A.2d 331, 334 (Del. 1940); and then citing *Fike v. Ruger*, 752 A.2d 112, 113 (Del. 2000)).

Defendants contend that "Plaintiffs unreasonably delayed in filing suit and their delay will severely prejudice Defendants." OB at 31. Defendants argue that Plaintiffs were on notice of their claims by April 19, 2024, when they attended the public meeting at which the Commissioners resolved to appoint Tedder as City Manager and approved the Employment Agreement. *Id.* at 5, 19. Plaintiffs then waited four months, until August 15, to file this lawsuit. In that time, Tedder relocated his family and began working as the City Manager, a position he now has held for over a year since Plaintiffs chose not to seek an expedited case schedule. Defendants urge that "undo[ing] the financial transactions and expenses related to

11

the commencement of Tedder's employment . . . would impose a substantial hardship on Defendants, constitute a waste of City resources, and be logistically impossible to enact with fidelity." *Id.* at 40.

A laches defense "is generally determined by a fact-based inquiry." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 210 (Del. 2005). As a result, "laches is 'not ordinarily well-suited for treatment on' a Rule 12(b)(6) motion to dismiss[,]" where the Court must assume the truth of the allegations in the complaint.[9] *Sykes v. Touchstream Techs., Inc.*, 2024 WL 1299928, at \*8 (Del. Ch. Mar. 27, 2024) (quoting *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009)). "[U]nless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate." *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, 2015 WL 5724838, at \*12 (Del. Ch. Sept. 30, 2015).

Although Defendants' laches argument is compelling, given the limited factual record before it, the Court cannot conclude that there is no set of facts

---

[9] For this reason, it is unsurprising that all of the cases on which Defendants rely were decided on a different procedural posture. *See, e.g.*, *Steele v. Ratledge*, 2002 WL 31260990, at \*1 (Del. Ch. Sept. 20, 2002) (entering summary judgment in favor of defendant on laches grounds); *Porach v. City of Newark, Del.*, 1999 WL 458624, at \*1 (Del. Ch. June 25, 1999) (same).

Plaintiffs could prove to avoid a laches defense. The Court therefore declines to dismiss Counts I and II on laches grounds at this early stage.

### 3. Because The Charter Is Ambiguous, The Motion To Dismiss Must Be Denied.

I next consider the merits of Plaintiffs' claim that the Commissioners violated the Charter by hiring a City Manager without the qualifications mandated under the Charter. That claim raises a matter of statutory interpretation. "It is well-settled under Delaware law that, if the statutory language at issue is 'unambiguous, then there is no room for judicial interpretation and the plain meaning of the statutory language controls.'" *Jimmy's Grille of Dewey Beach, LLC v. Town of Dewey Beach*, 2013 WL 6667377, at *2 (Del. Ch. Dec. 17, 2013) (quoting *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011)) (citing *Borden, Inc. v. City of Lewes*, 1989 WL 147366, at *2 (Del. Super. Nov. 13, 1989)). "However, if the language at issue is ambiguous, *i.e.* 'if it is susceptible of two reasonable interpretations or if a literal reading of its terms would lead to an unreasonable or absurd result not contemplated by the legislature,' then the motion to dismiss must be denied." *Id.* (footnotes omitted) (quoting *CML V, LLC*, 28 A.3d at 1041) (citing *Kahn v. Portnoy*, 2008 WL 5197164, at *3 (Del. Ch. Dec. 11, 2008)).

The statutory language at issue—Section 17(b) of the Charter—is susceptible to two reasonable interpretations. It states as follows:

13

> No person shall be appointed to the office of City Manager of the Commissioners of Rehoboth Beach unless he shall have received a degree in engineering from an approved college or university, or shall have served as City Manager of some other incorporated municipality for a period not less than four (4) years or shall have had practical engineering experience for a period of not less than four (4) years; ***provided, however, that nothing contained herein shall prohibit the Commissioners of Rehoboth Beach from imposing such other qualifications as may be deemed necessary*** . . . .

Charter § 17(b) (emphasis added). The parties agree that Section 17(b) sets qualifications for the City Manager: he or she must (1) have a college degree in engineering, (2) have served as a city manager for at least four years, or (3) have at least four years of practical engineering experience. The parties disagree, however, on how to interpret the clause emphasized above: "***provided, however, that nothing contained herein shall prohibit the Commissioners of Rehoboth Beach from imposing such other qualifications as may be deemed necessary*** . . . ." Plaintiffs interpret that language to permit the Commissioners to impose *additional*, but not *conflicting*, qualifications when selecting a City Manager. *See* AB at 14–15 (arguing that "'other' means 'additional' and not 'different'"). Defendants instead read Section 17(b) to provide default qualifications that the Commissioners may change if necessary. Such flexibility is important, Defendants say, because the position of "City Manager" is not defined in the Charter, and individuals holding that position in other municipalities may have different titles ("Town Manager" or "Town Administrator") or cover varying responsibilities (an "Assistant City Manager" in

14

one city may do the same work as the "City Manager" in another). *Id.* at 28–29. Here, for instance, Tedder held the title of "city manager" in Boulder City, Nevada for less than three years, but worked as an assistant city manager in Leavenworth, Kansas for approximately five and a half years before that, potentially doing comparable work. Compl., Ex. D.

Plaintiffs' interpretation is reasonable. At least one Delaware case has interpreted the word "other" to mean "additional" rather than "different." *See Telcom-SNI Invs., L.L.C. v. Sorrento Networks, Inc.*, 2001 WL 1117505, at *5 (Del. Ch. Sept. 7, 2001) ("The word 'other' means 'more, additional.' Thus, a fair reading of 'any other equity security' equates to 'any additional share.'" (footnote omitted) (quoting *Other*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 1993)), *aff'd*, 790 A.2d 477 (Del. 2002)). *But see Other*, THE MERRIAM-WEBSTER DICTIONARY (9th prtg. Aug. 2024) (defining "other" to mean "different" *or* "additional").[10]

---

[10] Plaintiffs also argue that "under the rule of *ejusdem generis*, 'other qualifications' means other, additional qualifications, and not other, different qualifications." AB at 15. Under the interpretive canon *ejusdem generis*, "where general language follows an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *Texas Pac. Land Corp. v. Horizon Kinetics LLC*, 306 A.3d 530, 559 (Del. Ch. 2023) (quoting *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1265 (Del. 2004)), *aff'd*, 314 A.3d 685 (2024). That canon does not apply here because Section 17(b) does not contain a list.

Defendants' interpretation is also reasonable. "Provided, however" is a phrase used to introduce a carve-out or exception. *See, e.g., Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 387 (Del. 2012) (noting that the phrase "provided, however" "excepts or 'carves out'" what follows). "Provided, however" is disjunctive; it should not be used to clarify a clause that is already clear, like "for the avoidance of doubt."[11] Reading "such other qualifications" to mean additional, but not different, qualifications would clarify what is already clear—that setting minimum qualifications does foreclose imposing additional qualifications. By contrast, interpreting Section 17(b) to impose default qualifications unless the

---

[11] Delaware's Legislative Drafting Manual explains that "'provided, however, that' should be purged from a drafter's toolkit because the phrases violate Drafting Rules 1 and 2; they are unclear, uncertain in their reach, and create unwieldy sentences. Replace the terms by ending the sentence and beginning a new one with 'But,'. As Bryan Garner notes, '[t]hat's how the drafters of the U.S. Constitution did it—eight times—and they were grammatically unimpeachable on that score." MARK J. CUTRONA, *Delaware Legislative Drafting Manual*, DEL. GEN. ASSEMBLY, DIV. OF LEGIS. SERVS. 111–12 (Holly Vaughn Wagner ed.) (2024 ed.) (quoting Bryan A. Garner, *Ax These Terms from Your Legal Writing*, ABA J.: BRYAN GARNER ON WORDS (Apr. 1, 2014, 3:30 AM), https://www.abajournal.com/magazine/article/ax_these_terms_from_your_legal_writing).

More recently, Garner has recognized "provided however that" can encompass both exceptions and conditions. Bryan Garner & Joseph Kimble, *Essentials for Drafting Clear Legal Rules*, U.S. CTS.: FORMS & RULES 94 (2024 ed.), https://www.uscourts.gov/sites/default/files/essentials_for_drafting_clear_legal_rules_20 24.pdf ("[P]rovided that, provided however that: reword to eliminate all provisos, usually with if (for conditions), or except or but (for exceptions).").

16

Commissioners decide it is necessary to impose different qualifications interprets "provided, however" as disjunctive, as it should.[12]

Because Section 17(b) of the Charter is susceptible of two reasonable interpretations, the Motion to Dismiss Counts I and II must be denied.

### 4. The Court Will Not Decide The Remedy At This Stage.

Counts IV and V of the Complaint seek equitable rescission of the Employment Agreement and an injunction prohibiting the payment of municipal funds to Tedder under the Employment Agreement.

Defendants seek to dismiss those "claims" on the grounds that such remedies would be impractical. Tedder moved his family across the country and has since worked as City Manager for over a year. Plaintiffs do not allege that he did anything wrong. He cannot be expected to work for free. And in two months, he will have

---

[12] Whether a conjunction is copulative ("and") or disjunctive ("or") matters. For example, in a statute providing that "[t]he State Fire Prevention Commission shall employ a Director for the Delaware State Fire School who shall be especially trained and qualified in fire fighting, fire experimental work, and emergency services training **or** *shall have such other qualifications* as deemed appropriate by the State Fire Prevention Commission including, but not limited to, educational and administrative experience[,]" "other qualifications" means qualifications different than those listed in the preceding clause. 16 *Del. C.* § 6619. But in a statute stating that "[a]ny person appointed pursuant to this section shall have a minimum of 10 years experience as a 'police officer,' . . . significant investigatory experience while working as a police officer, shall be in good standing with the previous or present law-enforcement agency where such person is or was employed, **and** *shall have such other qualifications* deemed appropriate by the Secretary," "other qualifications" seems to mean "additional" qualifications. 29 *Del. C.* § 9016.

the four years' experience working as a City Manager allegedly required under the Charter.

Defendants make good points. But at this stage, the Court cannot determine what remedy will be awarded if Plaintiffs succeed on their Charter claim. On a motion to dismiss, the Court only determines whether the plaintiffs have stated a claim for which relief might be granted.[13] "Because the determination of relief is beyond the scope of this motion and premature without an established evidentiary record, I will not address this issue[]" further. *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 991 (Del. Ch. 2000); *see also, e.g.*, *Eni Hldgs., LLC v. KBR Gp. Hldgs., LLC*, 2013 WL 6186326, at *24 (Del. Ch. Nov. 27, 2013) ("Rescission is not a cause of action but a remedy available only where facts indicate equity so requires. Because such an inquiry is fact specific, I decline to address it in connection with this Motion to Dismiss . . . ." (footnote omitted) (citing *Crescent/Mach I P'rs, L.P.*, 846 A.2d at 991)).

---

[13] For this reason, it is unsurprising that the cases on which Defendants rely were decided after trial. *See, e.g.*, *Midland Grange No. 27 Patrons of Husbandry v. Walls*, 2008 WL 616239, at *9 (Del. Ch. Feb. 28, 2008) (deciding post-trial that rescission would be impracticable); *Ravenswood Inv. Co., L.P. v. Est. of Winmill*, 2018 WL 1410860, at *22 (Del. Ch. Mar. 21, 2018, revised Mar. 22, 2018) (same), *aff'd*, 210 A.3d 705 (Del. 2019).

**B.      The Complaint Fails To State A Claim Under FOIA.**

Count III seeks an order voiding the Employment Agreement under Title 29, Section 10005(a), which states that "[a]ny action taken at a meeting in violation of [FOIA] may be voidable by the Court of Chancery."  29 *Del. C.* § 10005(a). Plaintiffs allege that the Commissioners violated FOIA (1) at seven executive sessions in November 2023 through March 2024, and (2) at the July 8 meeting to ratify the Employment Agreement.

> **1.      Plaintiffs Are Barred From Bringing FOIA Claims Challenging Executive Sessions In November 2023 Through March 2024.**

Plaintiffs first allege that the Commissioners violated FOIA at seven executive sessions in November 2023 through March 2024.  Defendants move to dismiss those challenges on grounds that they are time-barred.

Title 29, Section 10005 provides two paths for determining whether a FOIA violation has occurred.  Section 10005(a) states that "[a]ny action taken at a meeting in violation of [FOIA] may be voidable by the Court of Chancery."  29 *Del. C.* § 10005(a).  A citizen who files a lawsuit in the Court of Chancery must do so "within 60 days of the citizen's learning of such action but in no event later than 6 months after the date of the action." *Id.*

Alternatively, under Section 10005(e), "[a]ny citizen may petition the Attorney General to determine whether a violation of [FOIA] has occurred or is

19

about to occur." 29 *Del. C.* § 10005(e). If a citizen goes that route, the Attorney General must "make a written determination of whether a violation has occurred or is about to occur" within twenty days of receiving the petition. *Id.* Then, "[i]f the Attorney General finds that a violation of [FOIA] has occurred or is about [to] occur, the citizen may: (1) File suit as set forth in this chapter; or (2) request in writing that the Attorney General file suit on the citizen's behalf." *Id.* If the citizen asks the Attorney General to file suit, the Attorney General must notify the citizen of its decision within fifteen days, and "[t]he citizen shall have the absolute right to file suit regardless of the determination of the Attorney General . . . ." *Id.* As a result, a diligent citizen could file a petition with the Attorney General upon learning of the conduct at issue; receive a determination from the AG's Office within twenty days; ask the Attorney General to file suit on the citizen's behalf and receive a response; and still file a lawsuit in the Court of Chancery "as set forth in this chapter"—*i.e.*, within the sixty-day limitations period under Section 10005(a)—if the Attorney General declines to file suit on the citizen's behalf.

Plaintiffs did not do that here. Instead, Plaintiffs knew of the actions taken at the executive sessions by the end of May, when they petitioned the AG's Office, but waited to file this action until more than sixty days later, on August 15, 2024.

Plaintiffs are therefore time-barred from bringing a claim to void actions taken at the executive sessions.[14]  *See* 29 *Del. C.* § 10005(a).

Plaintiffs argue that although they were aware of the actions identified in their FOIA petition, they did not know for certain that the actions violated FOIA until they received the AG Opinion on June 26.  *See* AB at 21.  That argument conflicts with the plain language of Section 10005(a), which requires a citizen to "fil[e] suit within 60 days of the citizen's learning of *such action*"—not of learning that the action *actually violates FOIA*.  29 *Del. C.* § 10005(a) (emphasis added).  *Cf. Reeder v. Del. Dep't of Ins.*, 2006 WL 510067, at *8 (Del. Ch. Feb. 24, 2006) (rejecting FOIA claim as untimely, despite plaintiff claiming "he did not understand FOIA," because he "was immediately aware of the conduct . . . that he contend[ed] violated FOIA and began accusing the DDCC of FOIA violations that same month"), *aff'd*, 931 A.2d 1007 (Del. 2006).  Because Plaintiffs failed to file this lawsuit within sixty days of learning about the November 2023 through March 2024 executive sessions, such challenges are time-barred.

---

[14] While the Attorney General can determine "whether a violation of [FOIA] has occurred or is about to occur" and may recommend remediation, under Section 10005, only the Court has the power to invalidate a public body's action.  29 *Del. C.* § 1005(a), (e); *see also* Compl., Ex. B at 6 ("The authority to invalidate a public body's action, or to impose other relief, is reserved for the courts.").

### 2. The Complaint Fails To Allege A FOIA Violation At The July 8 Meeting.

Plaintiffs also contend that the Commissioners violated FOIA at the July 8 meeting to ratify the Employment Agreement. Section 10004(2) states that "[a] meeting that is open to the public under paragraph (a)(1) of this section must include time for public comment . . . ." 29 *Del. C.* § 10004(2). Although "[a] public body may impose reasonable time, place, and manner restrictions on the length of the public comment period and the amount of time allotted for each public comment," "[t]he time for public comment must provide a meaningful opportunity for the public to engage with the public body."[15] *Id.* § 10004(2)(a)–(b).

The Complaint alleges that the purpose of the July 8 meeting was to consider the Employment Agreement, including Tedder's compensation package, and "for the purpose of ratifying the Employment Agreement." Compl. ¶¶ 42–43. Although the Complaint alleges that "the Mayor specifically instructed the public in attendance [at that meeting] that comments regarding the Charter's requirements or the qualifications of Tedder to serve as City Manager would be deemed out of order[,]" *id.* ¶ 44, it does *not* allege that the Commissioners failed to provide adequate time for public comment, prevented any resident from speaking,

---

[15] FOIA allows a public body to remove "any person from a public meeting who is wil[l]fully and seriously disruptive of the conduct of such meeting." 29 *Del. C.* § 10004(d).

interrupted any comment, or removed any person from the meeting. In fact, the Complaint alleges the opposite—that during the meeting, eighteen members of the public "spoke out against the compensation package, the hiring of Tedder, the lack of transparency, and the violations of the Charter." *Id.* ¶ 45. Such allegations do not support an inference that the Commissioners failed to provide a meaningful opportunity for public engagement in violation of FOIA at the July 8 meeting.[16] Count III must be dismissed.

## III. CONCLUSION

For the reasons explained above, the Motion to Dismiss is denied in part and granted in part. The Complaint states a claim for violation of the Charter. It does not state a claim for violation of FOIA. The parties are directed to meet and confer on a proposed case schedule to move this action forward.

---

[16] Plaintiffs also contend that the July 8 meeting failed to "cure" earlier FOIA violations, but again, such claims are time-barred under the statute. *See supra* pp. 19–21.